SHEIN et al. v. UNITED STATES et al.

No. C564–51.

United States District Court
D. New Jersey.

Dec. 17, 1951.

Kahn & Schildkraut, Trenton, N. J., for plaintiffs. Jack Garrett Scott, Washington, D. C., of counsel.

Grover C. Richman, Jr., U. S. Atty., by Stuart B. Rounds, Asst. U. S. Atty., Newark, N. J., Robert W. Strange, Sp. Asst. to Atty. Gen., for the United States, for defendant.

Daniel W. Knowlton, Chief Counsel, Edward M. Reidy, Associate Counsel, Washington, D. C., for Interstate Commerce Commission.

Frank M. Thompson, Jr., Princeton, N. J., for intervener. James J. Doherty, Baltimore, Md., of counsel.

Before McLAUGHLIN, Circuit Judge, FORMAN, Chief Judge, and MADDEN, District Judge.

MADDEN, District Judge.

This is an action to enjoin, set aside and annul two orders of the Interstate Commerce Commission, hereinafter called Commission, brought under Section 1336, 2284 and 2321–2325, Title 28 U.S.C.A., wherein the Commission, in one order dated July 24, 1950, denied an application of plaintiff, Shein's Express, hereinafter referred to as Shein, a partnership operating as a common carrier by motor vehicle in interstate commerce, to purchase under Section 5(2) of the Interstate Commerce Act [1] cer-

1. 49 U.S.C.A. § 5(2).

tain operating rights of plaintiff, Wesley Stillwell, another partnership hereinafter called Stillwell, operating as a common carrier by motor vehicle and in the other order dated April 2, 1951 denied plaintiffs' petition for reconsideration, by the entire Commission.

The United States has been made a party defendant as required by Section 2322, Title 28 U.S.C.A., and the Interstate Common Carrier Council of Maryland, Inc.[2] has intervened.

Shein brothers, holding equal interests in the partnership, operate in interstate or foreign commerce, pursuant to a certificate in No. MC–80504, as a motor common carrier of general commodities, with exceptions, over regular routes, between New York City and Wilmington, Delaware, principally via Newark and Trenton, New Jersey, and Philadelphia, serving all intermediate and certain off-route points.

Stillwell operates in interstate or foreign commerce, pursuant to certificates in Nos. MC–93789, MC–93789 (Sub–No. 2), and MC–93789 (Sub–No. 3), as a motor common carrier (1) of general commodities, excepting, among others, household goods as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467, over irregular routes, between points in Aston and Middletown Townships, Delaware County, Pennsylvania, on the one hand, and, on the other, points in New Jersey, Delaware, Maryland, the District of Columbia, and those in the New York commercial zone as defined in New York, N. Y. Commercial Zone, 1 M.C.C. 665, (2) of general commodities, with exceptions, over a regular route, between Fernwood and Wawa, Pennsylvania, over U. S. Highway 1, serving all intermediate points and eight off-route points, restricted to service which is auxiliary to, or supplemental of, railway service, and (3) of household goods, as previously defined, over irregular routes, between Media, Pennsylvania and points with-

in 15 miles thereof, on the one hand, and, on the other, points in Massachusetts, Rhode Island, North Carolina, Virginia, Maryland, New Jersey, Delaware, the District of Columbia, and those in a defined area in New York.

Shein proposed to purchase that portion of Stillwell's operating rights under the certificate in No. MC–93789 (Sub–No. 2) which authorizes the transportation of general commodities between points in Aston and Middletown Townships, Pennsylvania, on the one hand, and, on the other, points in Delaware, Maryland, and the District of Columbia.

It will be well to keep in mind that the present service performed by Stillwell and sought to be transferred to Shein, as granted by the Commission under MC–93789 (Sub–No. 2), is an irregular route service.

It might be well also to point out that an application, likewise under Section 5(2), wherein authority was sought by Stillwell to sell its rights in MC–93789 (Sub–No. 2) covering the transportation of general commodities between points in Aston and Middletown Townships, on the one hand, and, on the other, points in New Jersey and those in the New York commercial zone to the Houff Transfer, Inc. was denied by the Commission[3]. It, however, is not a part of this record and does not constitute a part of this proceeding.

A hearing was conducted upon the application by an examiner of the Interstate Commerce Commission, at which time plaintiffs and interveners appeared through counsel. Plaintiffs produced two witnesses who testified concerning the proposed transfer, to wit, Wesley C. Stillwell, representing the vendor partnership, and Phillip Shein, representing the vendee. A third witness, a certified public accountant, testified solely about the accounting practices and capital structure of Shein.

The examiner submitted a report and recommended an approval of the transfer,

---

2. An association of nine motor carriers of property including the Baltimore Transfer Co. of Baltimore City and the Davidson Transfer & Storage Co., operating over routes extending generally be-

tween Baltimore, Maryland and New York, New York via Philadelphia, Pennsylvania.

3. Houff Transfer, Inc.—Purchase—Stillwell, 56 M.C.C.

conditioned upon certain financial arrangements which are of no moment here.

Exceptions, with a request for oral argument, were filed by the interveners to the report. Oral argument was denied and on March 6, 1950 the Commission, through Division 4, made a report which in substance adopted the recommendations of the examiner, with a few minor changes, approving the transfer therein sought.

On April 6, 1950 the intervener sought a reconsideration of the matter and a denial of the application. Plaintiffs thereupon replied.

On July 24, 1950, the Commission, through the same division, namely Division 4, and the same Commissioners "Reopened the proceedings for reconsideration on the record as made" and reversed itself, denying the application.

Plaintiffs attack the action of the Commission as being arbitrary and capricious and not founded upon any substantial evidence and also upon a mistaken theory of the law that the burden was upon the applicant-plaintiffs to prove the need of such transfer in the public interest.

■ In these matters, where this statutory court sits in effect as a reviewing court, we cannot substitute our judgment for that of the Commission but must follow the rule universally laid down, as follows: "The function of the reviewing court is much more restricted. It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done." United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515–535, 66 S.Ct. 687, 90 L.Ed. 821; Interstate Commerce Commission v. Mechling, 330 U.S. 567–574, 67 S.Ct. 894, 91 L.Ed. 1102; and United States v. Chicago Heights Trucking Co., 310 U.S. 344–352, 60 S.Ct. 931, 84 L.Ed. 1243.

■ Plaintiff argues that the Commission having reported favorably on the application, upon the evidence before it and the examiner, cannot upon reconsideration reverse its position and deny the application without any new evidence. We hold this argument to be without merit.

The very nature of our American practice has been that an aggrieved party may always have opportunity to say, "You made a mistake". If upon deeper research, fuller reflection and consideration the judicial or quasi-judicial body would see a mistake but persist in it, this would amount to mere obstinacy or stubbornness and foster the highest form of injustice.

This view was expressed by Chief Judge Parker of the Fourth Circuit in the matter of Beard-Laney, Inc., v. United States, D.C., 83 F.Supp. 27, at page 33 where he said: "The rules to be applied in reviewing the order of the Commission are not different because that order resulted from a reversal of a prior decision of the hearing division upon a petition for rehearing. The fact that a rehearing was granted shows that the questions involved were carefully considered and the ultimate decision of the division, which received the approval of the Commission, was the final and definitive action of the Commission, which is what we are authorized to review; and it is to be reviewed in the same way and under the same limitations as other reviewable orders. We may not substitute our judgment for that of the Commission because upon a rehearing and fuller consideration of the facts it has arrived at a different conclusion from that which its hearing division had first expressed."

■ The plaintiffs also argue that the Commission's holding in the present case is inconsistent with its ruling in what is known as the Powell case [4] and consequently unlawful. We disagree with plaintiffs in the application of the Powell case here on both the facts and the law. Firstly, in the Powell case it was determined that the vendor was possessed of operating rights over two separate but connected regular routes, and therefore the purchaser was not planning or proposing to furnish a service any greater in scope than the vendor had the right to do pursuant to its grant, under the grandfather clause. In the case now

---

4. Byers Transportation Co. v. United States, D.C., 48 F.Supp. 550; Byers Transportation Co. v. United States, D. C., 49 F.Supp. 828.

before the Court, the Commission found that the vendee, Shein, proposed a radical change in the pattern of operations conducted by vendor, Stillwell [5]. Secondly, it has been established that the Commission's ruling need not be consistent in all respects. See Beard-Laney, Inc., v. United States, supra, 83 F.Supp. at page 33: " 'This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it.' Virginian Ry. Co. v. United States, 272 U.S. 658, 665, 666, 47 S. Ct. 222, 225, 71 L.Ed. 463; Interstate Commerce Commission v. Union Pac. R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308."

■■ It is so well established that the citation of authorities is unnecessary, that if Shein had applied to the Commission for a certificate of convenience and necessity to operate over a regular route in this territory that the burden would have been upon it (Shein) to prove, by competent evidence to the satisfaction of the Commission, that the public interest required such service. May it then attempt to attain this end result indirectly by the purchase proposed here without carrying the burden of proof incumbent upon it if it was attempted directly? We think not and we think that the Commission applied the right rule of law in reaching its conclusions.

Lastly, was there substantial evidence before the Commission to warrant their determination that the purchaser (Shein) proposed to furnish a radically changed service from that performed by Stillwell.

In consideration of this point it might be well to point out the difficulties besetting the Commission and the reviewing courts in distinguishing between regular and irregular routes. Circuit Judge Collet in Brady Transfer & Storage Co. v. U. S., D.C., 80 F.Supp. 110, 115, affirmed per curiam, 335 U.S. 875, 69 S.Ct. 239, 93 L.Ed. 418, speaking of these difficulties said: "And then it (the Commission) disavowed, and we think very properly, the intention or even the possibility of laying down any hard and fast inelastic yardstick which could be ap-

plied to all cases for the determination of what class a particular operation fell into. It did in its report in this case announce eight factors or criteria, some or all of which might in an individual case exist and have a relevant bearing on the determination of the type of operation. It is clear from the Commission's order that there was no intention to assert that any one of those eight factors would necessarily be controlling. On the other hand, it is equally clear that the Commission was undertaking to give such assistance as it could to the industry in announcing these factors in order that so many of them as might exist in any given case might be considered collectively in determining the type of operation."

It is unnecessary to set forth here the factors established by the Commission. Suffice it to say that they can be found either in "Classification of Motor Carriers of Property," 2 M.C.C. 703 or in the footnotes of the Brady Transfer & Storage Co. v. U. S. decision, supra, 80 F.Supp. running from page 115 to page 117 inclusive.

Summarizing these factors Judge Collet went on to say: "We deem it adequate to observe that there is, as the Commission found, a clear distinction in type between the indiscriminate, coincidental, non-scheduled, unperiodical, itinerant, ambulatory service of an irregular route carrier and the operation of a regular route certificate holder over a carefully specified route to only specifically authorized points on that route on schedules published and filed, with the obligation on the part of the carrier to give, and the responsibility on the part of the Commission to compel, the carrying out of that operation to such an extent as the convenience and necessity of the public justified."

In this light let us look at the stipulated condensation of the testimony and record before the Commission. It is true that when the witness, Phillip Shein, testified and was speaking generally he said: "We are prepared to offer a service into Maryland, Delaware and the District of Columbia that is requested by our shippers. We

5. See Report 56 M.C.C., page 714, paragraph 3.

will serve them as they require the service. *It is not our intention to establish any regular routes but this is to be strictly an irregular route operation."* (Emphasis supplied.) Plaintiffs' Appendix A, page 6.

However, when pressed on either direct or cross examination for a more specific description of the type of service proposed you find this kind of testimony:

"If we obtain these rights, the truckload or two truckloads interchange at Philadelphia would be entirely eliminated. We have experienced delays in the transfer of freight at Philadelphia and the ultimate delivery at point of destination. If we move the freight through without interchange, we could save as much time as almost a day. On the interchange movements, interchange was effected by the physical transfer of the freight from one vehicle to another at Philadelphia." Plaintiffs' Appendix A, page 7.

"All traffic that originates on a given day at New York or Newark moves to its destination that day. No traffic is held up at any time. If we obtain the rights involved here, our operating people have told me that it would take them approximately seven or eight hours from New York to Baltimore from the time it leaves the terminal, and any shipments originating at any points between New York and Baltimore would take lesser time, of course, places like Trenton, Philadelphia, or Wilmington. We hope to provide overnight service. That is being done by other carriers, and I don't think that, if an overnight service is required, there is any reason why we couldn't perform it. Philadelphia would be a consolidating point for the Stillwell freight." Plaintiffs' Appendix A, page 8.

"If we should get a call for a traffic movement from Cumberland or Hagerstown to New York or Trenton or Newark, (62) we would probably get a local terminal carrier to make the pick-up for us. There are many of them in Baltimore. On the other hand, if we happen to have a load into Cumberland or Hagerstown, and there is a load coming back, we would pick it up. We have made no decision as to stationing any equipment in Aston or Middletown." Plaintiffs' Appendix A, page 8.

"It is not correct that of these two truckloads daily into Philadelphia there are from one to two truckloads interchanged for Baltimore every day. The one to two truckloads I mentioned came from all of our territory, over all of our routes and not just from New York. All of the traffic that we interchange that I am speaking of is traffic that originates at points north of Philadelphia on our regular routes. It is brought into Philadelphia daily and we interchange at Philadelphia, generally for Baltimore. One of the principal reasons why we want the Commission to grant us this authority is to permit us to eliminate this interchange." Plaintiffs' Appendix A, page 9.

"If we picked up a particularly good shipper in New York who would give us ten or twelve truckloads daily, we would handle those truckloads the same way, directly through to common gateway points and on through to Baltimore. That would be the most practical way of doing it. I don't know whether this is the way we would do it. That would rest in the hands of our operating people but I assume that would be the way they would move it. We have made no decision as to how many solicitors we would intend to have in Baltimore. I know definitely that we have only regular route rights now and that we are buying irregular route rights and paying $20,000 for them." Plaintiffs' Appendix A, page 10.

It is easy to see, therefore, why on closer scrutiny the Commission determined that Shein was seeking something vastly different than that which Stillwell had. For the Commission to accept Shein's plain statement that it would be the same irregular route service, in the face of his other testimony, would be playing the part of the ostrich and attempting to ignore the obvious.

This view is borne out by the findings in Brady Transfer & Storage Co. v. U. S., supra, and very well expressed by Judge Paul in Falwell v. U. S., D.C., 69 F.Supp. 71, 77, affirmed per curiam, 330 U.S. 807, 67

326

S.Ct. 1087, 91 L.Ed. 1264, when he was speaking of the refusal of the Commission to approve the sale of certificate which would in effect join a regular and irregular route service, and said: "To do so would grant to holders of irregular-route certificates a free hand to operate as they chose; to operate irregularly over such parts of the territory as they might choose and to establish regular-route operations where they so desired. An irregular-route certificate would be authority to conduct either or both forms of operation at the carrier's choice. It would nullify the distinction between regular and irregular route carriers and would nullify the power of the Commission to establish and maintain comprehensive and efficient service adjusted to the public need and free from destructive competition between carriers."

Plaintiffs also complain of the action of the Commission, of April 2, 1951, denying their petition for reconsideration by the entire Commission of the order by Division 4, of July 24, 1950, herein complained of. The matter of a rehearing is strictly a matter of discretion with the administrative body, in this case the Interstate Commerce Commission, and not for a reviewing court. See I. C. C. v. Jersey City, 322 U.S. 503, and the cases cited by Mr. Justice Jackson on pages 515, 516, 517 and 518, 64 S.Ct. 1129, 88 L.Ed. 1420.

We, therefore, conclude that the Commission applied the right rule of law and had substantial evidence to support its ruling; that there would be a radical change in the pattern of the operations; that there would be a probable adverse effect which this would have on competing carriers; that there was a lack of evidence to show that the transaction would supply any need of the public not now being adequately met by other carriers; and therefore concluding that the granting of the transfer would not be consistent with the public interest. The refusal of the Commission to grant reconsideration by the entire Commission was within its sound discretion and we find no abuse thereof.

The bill of complaint herein will accordingly be dismissed.