DeCAMP BUS LINES, a corporation of the State of New Jersey, Plaintiff,

v.

UNITED STATES of America, and Interstate Commerce Commission, Defendants.

Civ. A. No. 608-61.

United States District Court
D. New Jersey.

Sept. 9, 1963.

James F. X. O'Brien, Newark, N. J., for plaintiff, DeCamp Bus Lines.

Lee Loevinger, Asst. Atty. Gen., John D. H. Wigger, Dept. of Justice, David M. Satz, Jr., U. S. Atty., Newark, N. J., for defendant, the United States.

Robert W. Ginnane, Gen. Counsel, Fritz R. Kahn, Asst. Gen. Counsel, for defendant, Interstate Commerce Commission.

Before McLAUGHLIN, Circuit Judge, MADDEN, Chief Judge, and WORTEN-DYKE, District Judge.

MADDEN, Chief Judge.

This is an action instituted by the plaintiff, DeCamp Bus Lines, to enjoin, set aside, annul and suspend an order of the Interstate Commerce Commission, dated May 4, 1961, in two separate dockets which were consolidated in the Commission's order, namely, DeCamp Bus Lines Extension—Parkway (Docket MC 109312, Sub No. 29) and Lakeland Bus Lines, Inc. and North Jersey Transit v. DeCamp Bus Lines (Docket MC–C–2175).

Jurisdiction under Sections 1336, 1398 and 2321 through 2325, inclusive, of Title 28 U.S.C., and under Section 1009 of Title 5 U.S.C., having been invoked, this district court of three judges was constituted and convened in accordance with Section 2284 of Title 28 U.S.C., to hear and determine the matter.

DeCamp Bus Lines (hereinafter referred to as DeCamp) is a corporation of the State of New Jersey engaged in the interstate transportation of passengers, baggage, mail and express, as a common carrier by motor vehicle, between New York City, New York and certain points in northern New Jersey under Interstate Commerce Commission certificates bearing Docket No. MC 109312 and various sub numbers issued thereunder. DeCamp served between the aforesaid points for a number of years prior to 1935, and certain of its operations are so-called Grandfather operations certificated to it by the Interstate Commerce Commission in a re-issued certificate, dated May 18, 1956, under Docket MC 109312. From time to time, in order to serve the traveling public, DeCamp extended its operations. To avail itself of such new and expeditious routings as the New Jersey Turnpike, the New Jersey Express High-

way S–3, the Garden State Parkway and other improved routes between New York City and its authorized points of service in northern New Jersey, DeCamp rerouted certain of its services and instituted others.[1] In instances where authority for the rerouting and institution of its services could not be derived from its Grandfather operations or from the terms of prior issued and operated certificates, DeCamp applied for and was issued certificates augmenting and supplementing its operating authority. The present controversy circumvolves one such rerouting and DeCamp's authorization therefor.

On August 22, 1957, DeCamp inaugurated its so-called Route 77 service between the Port of New York Authority Bus Terminal in the Borough of Manhattan, New York City, New York, over New Jersey Express Highway S–3, the Garden State Parkway, and certain streets and highways in the City of East Orange, the City of Orange, the Town of West Orange, the Town of Livingston, the Township of Hanover, the Township of Parsippany Troy-Hills, and the Town of Morristown, all of which are located in the State of New Jersey.

On February 21, 1958, Lakeland Bus Lines, Inc. and North Jersey Transit by joint complaint charged that DeCamp had undertaken interstate passenger operations unauthorized by its certificates of public convenience and necessity in violation, inter alia, of Section 206 of the Interstate Commerce Act, 49 U.S.C. § 306. The complainants specifically alleged that in operating the Route 77 service DeCamp traversed portions of the Garden State Parkway in East Orange and Bloomfield, New Jersey, which were unauthorized. The complaint was filed with the Interstate Commerce Commission and given docket designation MC–C–2175. A hearing thereon was held before an examiner on September 23, 1958, as a result of which, the examiner filed his report and recommended order wherein he concluded

that DeCamp's Route 77 service was being operated over the Garden State Parkway in East Orange and Bloomfield without the appropriate authority and that the operations thereover should be immediately discontinued. The report and recommended order required DeCamp "to cease and desist forthwith and hereafter from such unauthorized operations unless and until appropriate authority therefor is obtained from the Commission." On March 26, 1959, DeCamp excepted to the examiner's report and recommended order, and the two complainants replied on April 30, 1959.

In the interim, apparently acting upon the examiner's recommended order, DeCamp, on March 17, 1959, filed a precautionary application for a certificate of public convenience and necessity in order to obtain specific authorization from the Interstate Commerce Commission to operate over the Garden State Parkway in East Orange, Bloomfield and Nutley, New Jersey. This application was filed with the Commission and given the docket designation Docket MC 109312, Sub No. 29. The application was heard by a joint board on October 19 and December 7, 1959, and was protested by Public Service Coordinated Transport and Lakeland Bus Lines, Inc. The report and recommended order of the joint board was served on April 29, 1960. Although the joint board did not expressly determine the issue of DeCamp's authorization to traverse the Garden State Parkway in East Orange and Bloomfield, it did find that a certificate of public convenience and necessity should be issued to DeCamp, granting the authority sought in the application. On May 25, 1960, Lakeland Bus Lines, Inc. excepted to the report and recommended order, and DeCamp replied on June 17, 1960.

Inasmuch as the Interstate Commerce Commission, Division 1, felt that both of the aforesaid proceedings (Docket MC–C–2175 and Docket MC 109312, Sub No. 29) involved related issues, the two matters were consolidated and disposed of by the

---

1. DeCamp alleges it rerouted company routes No. 99, No. 66, No. 33, No. 32, No. 44, and No. 55; and, also instituted company routes No. 88 and No. 77.

Commission in its report dated September 12, 1960, and served September 19, 1960, as follows:

"In No. MC–109312 (Sub-No. 29), we find that the present and future public convenience and necessity require operation by applicant as a common carrier by motor vehicle, in interstate or foreign commerce, of passengers and their baggage, between East Orange and junction New Jersey Highway 3 Ramp and New Jersey Highway 3 Ramp from East Orange over the Garden State Parkway to Junction New Jersey Highway 3 Ramp, thence over New Jersey Highway 3 Ramp to New Jersey Highway 3 and return over the same route serving no intermediate points; that applicant is fit, willing and able properly to perform such service and to conform to our rules and regulations thereunder; that a certificate authorizing such operations should be granted; and that the application in all other respects should be denied.

"In No. MC–C–2175, we find that the transportation by defendant of passengers and their baggage between the Port of New York Authority Bus Terminal, Borough of Manhattan, New York, N.Y., and Morristown, N.J., by operating over New Jersey State Route 3, the Garden State Parkway, via Clifton, Bloomfield, Nutley, again through Bloomfield and East Orange to the Parkway exit therein, thence over certain streets and highways in the City of East Orange, the City of Orange, the Town of West Orange, the Town of Livingston, the Township of Hanover, the Township of Parsippany Troy-Hills, and the Town of Morristown, and return over the same routes, has been unauthorized under the terms of its existing certificate; and that in view of the grant of the authority set forth in the preceding paragraph the complaint should be dismissed."

Thereupon, Public Service Coordinated Transport filed a petition for reconsideration in Docket MC 109312, Sub No. 29, and DeCamp filed a petition for reconsideration, or, in the alternative, oral argument or further hearing in Docket MC–C–2175. Both petitions, however, were denied by the Commission on May 4, 1961, and shortly thereafter a certificate of public convenience and necessity No. MC 109312, Sub 29, dated June 13, 1961, was issued to DeCamp granting the authority set forth in the Commission's report and order.

On May 23, 1961, DeCamp received a letter from the Interstate Commerce Commission written by an Assistant Director relative to the proceedings in MC 109312, Sub 29 and MC–C–2175, stating in part:

" * * * In connection with this action, the Commission has instructed this office to inform you that your other operations should conform to the interpretation contained in the report of Division 1 in the application proceeding MC–109312, Sub 29, decided September 12, 1960, which embraced No. MC–C–2175, Lakeland Bus Lines, Inc. and North Jersey Transit v. DeCamp Bus Lines.

"If it should be considered necessary, temporary authority may be sought with respect to any particular service for which your line does not hold authority, or which it cannot properly perform under the existing authority under the above decision."

Subsequently, on August 2, 1961, this action was commenced by DeCamp to enjoin, set aside, annul and suspend the order of the Commission.

Upon first impression it would appear DeCamp assumes a unique position in instituting this suit inasmuch as the determinations of the Commission resulted, first, in the dismissal of the complaint against DeCamp in Docket MC–C–2175, and second, in the granting of DeCamp's application in Docket MC 109312, Sub No. 29, both results apparently favorable to

DeCamp. However, DeCamp's position becomes more comprehensible when it is understood that, fundamentally, DeCamp seeks to review the findings and conclusions of the Commission which DeCamp alleges adversely affect its other services and prior issued and operated certificates, as well as those in question in Docket MC–C–2175.[2] The argument is advanced that the findings and conclusions of themselves and in conjunction with the Commission's letter have the legal effect of impairing, restricting, nullifying or revoking in part such other services and certificates, thus confiscating its property rights in and to the same in violation and contravention of Section 212 of the Interstate Commerce Act, 49 U.S.C.A. § 312.

DeCamp urges that, in effect, the Commission has issued a declaratory order directing it not to make use of its certificate rights in a manner contrary to the Commission's interpretation of the same. DeCamp then asserts that it has been utilizing such certificate rights in this and its other operations in this now prohibited and unauthorized manner for a period of at least twelve years with the knowledge of the Commission, and that in doing so it relied on the certificates, the interpretation which the Commission has placed on its certificate rights as far back as 1949 and the heretofore uniform interpretation of similar and identical certificates by the Commission and the Courts. DeCamp asserts that it has made considerable and substantial investments in such operations which will now be affected by reason of the Commission's declaratory order.[3]

The first issue with which this Court is confronted is whether the order of the Commission in this case is reviewable at the insistence of the plaintiff DeCamp.

The order obviously incorporates the Commission's findings of fact and conclusions of law relating to Docket MC–C–2175 wherein it was determined that DeCamp's operation of its Routes 77 services over the Garden State Parkway were unauthorized under its prior issued and operated certificates, and the findings of fact and conclusions of law relating to Docket MC 109312, Sub No. 29, wherein it was determined that DeCamp be issued a certificate of public convenience and necessity, authorizing the operation of the Route 77 services. The letter of May 23, 1961, written by an Assistant Director at the instruction of the Commission unequivocally informs DeCamp that its other operations should conform to the interpretation contained in the Commission's Report relating to Docket MC–C–2175. On the surface, the Commission's determination in Docket MC–C–2175, together with the letter of May 23, 1961, imminently affect DeCamp's property rights in its other operations.

The Commission's determination in Docket MC–C–2175, apparently favorable to DeCamp, is, in fact, a favorable result for the complainants against DeCamp and an adverse adjudication for DeCamp, preventing it from utilizing its certificates in the manner employed by it, in the operation of its Route 77 services and, through the Commission's letter of May 23, 1961, in its other operations.

It would be expedient, indeed, to conclude that the application for and the issuance of the requisite authorization to operate the Route 77 services under the now issued certificate of public convenience and necessity (Docket MC 109312, Sub No. 29), renders the issue of DeCamp's unauthorized operation of the Route 77 services in Docket MC–C–2175 moot. To do so, however, would be to patently ignore the right of DeCamp to

2. DeCamp does not challenge the findings made by the Commission in DeCamp Bus Lines Extension—Parkway (Docket MC 109312, Sub No. 29) except insofar as said docket was consolidated with Lakeland Bus Lines and North Jersey Transit v. DeCamp Bus Lines (Docket MC–C–2175).

3. DeCamp alleges the Commission's order and letter of May 23, 1961, affect its Routes 33, 44, 55, 66, 88 and 99, although the legality of such operations was never placed in issue in the Docket MC–C–2175 proceedings.

protect its property rights in regards to the Route 77 services by the filing of a precautionary application for such authority, as was undoubtedly done in this case, and to ignore DeCamp's property rights in its other operations and certificates which are imminently affected. Under such circumstances DeCamp should not be denied the opportunity of a review of the Commission's determination upon the ground that the prime issue is now moot. Expediency at such a price is too costly.

This Court cannot permit the form of the order in question to control the issue of reviewability, nor can the Court allow such form to obscure the practical effect which the order, together with the Commission's subsequent directive might entail. The order imparts finality of administrative action. The determination is not a general abstract declaration but a specific concrete adjudication. The order and the Commission's letter were directed to DeCamp, requiring it to refrain from a use of its certificates contrary to the Commission's interpretation and requiring it to conform its operations thereto. They certainly speak of the future and are contemplative of future effect. Inasmuch as certain of DeCamp's rights have now been fixed by the Commission's interpretation of its certificates, it would not be speculative, in light of the Commission's letter, to assume further action on the part of the Commission in the event of non-compliance by DeCamp. Disregard of the Commission's adverse action would entail the threat of oppressive civil and criminal penalties. On the other hand, compliance may create an undue burden upon DeCamp. At the very least, the Commission's determination now imposes a cloud upon DeCamp's operating rights in the use of its certificates and endangers DeCamp's business investment therein.

In the light of the foregoing, and in view of the decisions in Frozen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956); Rochester Tele. Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147 (1939);

and Pennsylvania Railroad Co. v. United States, 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960), it is concluded that the findings and conclusions incorporated in the order of the Commission are reviewable herein.

The fact that this Court has now determined DeCamp is entitled to a review of the Commission's order does not imply that DeCamp should prevail upon the merits. The ultimate legal issues to be determined relate to the validity of the findings and conclusions of the Commission, to which the Court now adverts.

Generally, DeCamp urges that the Commission's action is unlawful under the terms of the Interstate Commerce Act and in violation of the Constitution; that the findings and conclusions are arbitrary, capricious, discriminatory and confiscatory; that said findings and conclusions are erroneous and unsupported by substantial evidence; and that the proceedings before the Commission were irregular and unlawful in violation of "Due Process."

Before considering the grounds alleged by DeCamp as a basis for setting aside and nullifying the Commission's order, the Court feels constrained to define its function upon a review of this nature.

The scope of judicial review to be accorded to orders of the Interstate Commerce Commission is limited. As indicated in the case of Rochester Tele. Corp. v. United States, 307 U.S. 125, at pages 139 and 140, 59 S.Ct. 754, at pages 761–762, 83 L.Ed. 1147:

"  *   *   *  Even when resort to courts can be had to review a Commission's order, the range of issues open to review is narrow. Only questions affecting constitutional power, statutory authority and the basic prerequisites of proof can be raised. If these legal tests are satisfied, the Commission's order becomes incontestable. Interstate Commerce Comm'n v. Illinois Central R. Co., 215 U.S. 452, 470 [30 S.Ct. 155, 54 L.Ed. 280]; Interstate Commerce Comm'n v. Union Pacific R. Co., 222

U.S. 541, [32 S.Ct. 108, 56 L.Ed. 308]."

It is settled that the courts are required to respect the findings and conclusions of the Commission which are made in the field of its expertise unless such findings and conclusions "have been induced by prejudicial departure from legal standards or when such decision is arbitrary or the result of an abuse of discretion." Malone Freight Lines v. United States, 107 F.Supp. 946 (D.C.N.D.Ala., 1952), aff'd 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712 (1953), Reh. den. 345 U.S. 914, 73 S.Ct. 643, 97 L.Ed. 1348; Ace Lines, Inc. v. United States, 197 F.Supp. 591 (D.C.S.D.Iowa, 1960); Simpson v. United States, 200 F. 372 (D.C.S.D.Iowa, 1961), aff'd 369 U.S. 526, 82 S.Ct. 954, 8 L.Ed.2d 83, Reh. den. 370 U.S. 914, 82 S.Ct. 1254, 8 L.Ed.2d 406.

In Dart Transit Co. v. Interstate Commerce Commission, 110 F.Supp. 876, at page 880 (D.C.Minn., 1953), aff'd. 345 U.S. 980, 73 S.Ct. 1138, 97 L.Ed. 1394 (1953), the District Court stated:

"It is our opinion that in an action such as this, a court may not substitute its judgment for that of the Commission with respect to the question of the scope or coverage of a permit which the Commission has issued to a motor carrier, if that question is at all doubtful. * * * In the interest of uniformity in the regulation and policing of the motor carrier industry, it is of course essential that the Commission be subjected to as little judicial interference as the law will permit."

Likewise, the Administrative Procedure Act, 5 U.S.C.A. § 1009(e), in pertinent part, provides:

"So far as necessary to decision and where presented the reviewing court shall decide all relevent questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall * * * (B) hold unlawful and set aside agency action,

findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case * * * reviewed on the record of an agency hearing provided by statute; * * *." See Ace Lines, Inc. v. United States, supra.

█ In view of the foregoing it seems quite clear that the scope of our judicial review is restricted generally to ascertaining whether there is warrant in law and facts for the action of the Commission. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); United States v. Chicago Heights Trucking Co., 310 U.S. 344, 60 S.Ct. 931, 84 L.Ed. 1243 (1940); Shein v. United States, 102 F.Supp. 320 (D.C.N.J.1952), aff'd 343 U.S. 944, 72 S.Ct. 1043, 96 L.Ed. 1349 (1952); Northern Valley Transfer, Inc. v. Interstate Commerce Commission, 192 F.Supp. 600 (D.C.N.J.1961).

With this established, the Court directs its attention to the grounds to be considered upon this review. First, whether the Commission's action is unlawful under the terms of the Interstate Commerce Act and in violation of the Constitution.

█ It is quite clear that the Interstate Commerce Commission has both jurisdiction and authority to determine the scope of lawful operations of a motor carrier in the first instance. This was indicated by the Supreme Court in the case of Andrew G. Nelson, Inc. v. United States, 355 U.S. 554 at page 558 of its opinion, 78 S.Ct. 496, at pages 498–499, 2 L.Ed.2d 484 (1958), Reh. den. 356 U.S. 934, 78 S.Ct. 770, 2 L.Ed.2d 763 (1958):

"* * * the ordinary meaning of the words in the permit is determinative. In ascertaining that meaning, we are not given carte

blanche; *just as '(t)he precise delineation of an enterprise which seeks the protection of the "grandfather" clause has been reserved for the Commission,'* Noble v. United States, 319 U.S. 88, 93, [63 S.Ct. 950, 87 L.Ed. 1277], (1943), *subsequent construction of the grandfather permit by the Commission is controlling on the courts unless clearly erroneous.* Dart Transit Co. v. Interstate Commerce Comm'n. [, D.C.], 110 F.Supp. 876, aff'd, 345 U.S. 980 [73 S.Ct. 1138, 97 L.Ed. 1394] (1953)." (Emphasis supplied.)

It was explicitly expressed by the Court in Wilson v. United States, 114 F.Supp. 814, at page 820 (D.C.W.D.Mo.1953), in the following language:

"* * * The scope of lawful operations by a motor carrier is both a legal and factual matter peculiarly within the authority of the I.C.C. to resolve in the first instance. Unless we can say as a matter of law that the Commission's interpretation of Frozen Food's authority as shown by the record herein cannot be sustained, we are bound by any factual determination concerning the same made by the Commission. If the authority granted Frozen Food is ambiguous in its terms, then 'its interpretation is for the Commission; and the courts cannot disregard such interpretation * * * unless it is clearly erroneous or arbitrary'. Adirondack Transit Lines v. United States, D.C., 59 F.Supp. 503, 504; affirmed 324 U.S. 824, 65 S.Ct. 688, 89 L.Ed. 1393; United Truck Lines v. I. C. C., 9 Cir., 189 F.2d 816. * * *"

And it is implicit in many other cases. See Ace Lines, Inc. v. United States, supra; Malone Freight Lines v. United States, supra; Simpson v. United States, supra; Sims Motor Transport Lines, Inc. v. United States, 183 F.Supp. 113 (D.C.N.D.Ill.E.D., 1959), aff'd 362 U.S. 637, 80 S.Ct. 1076, 4 L.Ed.2d 1019 (1960); and United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 480, 62 S.Ct. 722, 86 L.Ed. 971 (1942).

In exercising the authority to determine the scope of lawful operations of a motor carrier it invariably becomes necessary for the Commission to construe or interpret the carrier's operating authority. In doing so, the Commission appropriately fulfills a function for which this expert body was created by Congress.

Throughout the instant proceedings, however, DeCamp has emphatically insisted that this is not a case of interpreting words contained in its certificates, but rather an attempt by the Commission to insert restrictive words into its certificates so as to amend, modify, change and revoke the same in violation of Section 212 of the Interstate Commerce Act, 49 U.S.C.A. § 312. It is true that Congress has delimited the Commission's power to suspend or revoke an outstanding carrier's certificate and that no certificate can be amended, modified, changed or revoked without the compliance with the provisions prescribed in Section 212 of the Act. Castle v. Hayes Freight Lines, 348 U.S. 61, 75 S.Ct. 191, 99 L.Ed. 68 (1954); Seatrain Lines, Inc. v. United States, 64 F.Supp. 156 (D.C.Del.1946), aff'd 329 U.S. 424, 67 S.Ct. 435, 91 L.Ed. 396 (1947). It is also true that the limitations on the power of the Commission to modify or revoke a certificate under Section 212 of the Act cannot be by-passed under a guise of interpretative action. Andrew G. Nelson, Inc. v. United States, supra, 355 U.S. 554, 558–559, 78 S.Ct. 496, 2 L.Ed.2d 484. Thus, it must be determined whether the Commission's action is an interpretation or construction of the scope of DeCamp's certificates, or, on the other hand, a modification, change or revocation of the same. If the Commission's action is determined to be a modification, change, or revocation (either wholly or partially) of DeCamp's certificates, it is unlawful and must be set aside for the procedure prescribed in Section 212 was not pursued.

The Court is satisfied from the record that the Commission has not sought to

modify, amend, change or revoke, under the guise of interpretative action, De-Camp's operating authority and that the Commission has merely attempted to determine DeCamp's rights under its certificates as they existed from the beginning.[4] Appropos of this Court's sentiment is the statement found in the opinion of the Court in Malone Freight Lines v. United States, supra, 107 F.Supp. 946, 951:

> "It is not felt that Title 49 U.S. C.A. § 312, Interstate Commerce Act, Part II, § 212, providing for the revocation of a certificate, is applicable, and to apply it would be to assume the plaintiff's contention of the issue, namely, that the contested operations were authorized by the certificate and revoked by the Commission's order. The Commission's interpretation of the certificate never included the finding that these operations were authorized and thus it could not revoke authority that never existed."

See Arrow Trucking Co. v. United States, 181 F.Supp. 775 (D.C.N.D.Okl.1960).

■ The Court further feels that the Commission's action herein, being interpretative in nature, should not be subjected to judicial interference by this Court unless this Court is persuaded that such action is arbitrary or capricious, constitutes an abuse of discretion, or is otherwise not in accordance with law, for the Court is bound by interpretative actions of the Commission unless it finds that action to be clearly erroneous.

Having established that the Commission is within its legal authority to determine the lawful operations of DeCamp by interpretative action, the Court next looks to that action to determine if it is arbitrary or capricious and, therefore, discriminatory or confiscatory. This impels the Court to a consideration of DeCamp's

fundamental position and specific arguments.

Basically, DeCamp maintains it is authorized to operate its questioned Route 77 services as previously specified over the Garden State Parkway in East Orange and Bloomfield, New Jersey, by virtue of its grandfather rights preserved to it in its certificate No. MC 109312, dated May 18, 1956. Essentially, De-Camp relies upon that portion of the certificate which authorizes it to transport passengers and their baggage over regular routes, as follows:

> "(1) * * * * * * * *
> "(2) * * * * * * * *
> "(3) Between New York, N. Y. and Orange, N. J., serving all intermediate points:

> "From New York to Jersey City, N. J. as specified above, and thence over city streets and connecting highways via Newark, N.J., to Orange, and return over the same route."

DeCamp argues that the authority to operate over city streets and connecting highways via Newark to Orange, New Jersey, set forth in paragraph (3), embraces the questioned operation over the Garden State Parkway; that there is no limitation on the streets to be used in Newark and Orange; and that since Newark and Orange are not contiguous, it can operate through East Orange and Bloomfield, New Jersey, which are adjoining and intermediate municipalities between Newark and Orange. DeCamp, in effect, urges that this authority grants it the right to operate over any city street not only in Newark and Orange but in or between the intermediate municipalities of Bloomfield and East Orange. Apparently relying on this authority, DeCamp does not strenuously argue that the authority for its questioned Route 77 servic-

4. As stated in Andrew G. Nelson, Inc. v. United States, supra, footnote 4, 355 U. S. at pages 558 and 559, 78 S.Ct. at pages 498–499, 2 L.Ed.2d 484.

"* * * Commission interpretation of the meaning of a permit, being simply a definitive declaration of what rights existed from the very beginning under the permit, cannot be equated with modification, however, unless found to be clearly erroneous."

es may be derived by tacking or segmentation, although the argument is alluded to in Counsels' brief.

DeCamp's contentions were rejected in the Commission's Report thus:

"* * * While DeCamp's certificate, insofar as it authorizes service through Newark to Orange, is unrestricted, the grant of authority to perform such a service clearly contemplated an east-west operation rather than a north-south operation and it would be unreasonable to interpret its certificate so as to authorize service to areas not included in its original proposal. Otherwise, it could use the alleged defect in its certificate as a device to serve all points in New Jersey as intermediate points in connection with its authorized service between New York and Orange.

"Nor do we agree that defendant can tack its separate grants of unrestricted authority to perform the considered operation. It holds authority to operate over all city streets and connecting highways in both East Orange and Bloomfield, and the services which it performs in those areas are regular route operations. The question naturally arises whether defendant can perform a lawful through service across the boundary of those contiguous communities. It is true that where one regular route extends to the boundary of a municipality, and another route extends from the same point on the boundary into a contiguous municipality, the two may be joined for through service, but only where it appears that such was the intent when the two authorities were granted. Compare Missouri Pac. Frt. Transport Co.-Pur.-Missouri Pac. R. Co., 58 M.C. C. 790, 794. It clearly was not DeCamp's intent when it obtained authority to operate between New York City and Caldwell and between New York City and Orange, both east-west operations, to perform a through service between East Orange and

Bloomfield, in a north-south operation. We are of the opinion that the situation here cannot be distinguished from that in Farmer-Purchase-Crouse, 45 M.C.C. 267."

DeCamp, in effect, contends that the Commission is estopped to declare its Route 77 operations over the Garden State Parkway unlawful. DeCamp argues that the Commission has previously acknowledged DeCamp's city street certificates in East Orange and Bloomfield, New Jersey, to include the authorization to operate over the Garden State Parkway in those municipalities. It is asserted that in previous application Docket MC 109312, Sub No. 23, DeCamp Bus Lines, Extension Garden State Parkway, 69 M. C.C. 818, DeCamp sought authority to operate over the Parkway in Nutley and Clifton, New Jersey; that in making said application it alleged authority to operate over the Parkway in East Orange and Bloomfield by virtue of its grandfather rights over city streets in said municipalities; that the Commission knew the purpose of this application, namely, to operate over the Parkway through East Orange, Bloomfield, Nutley and Clifton, to Highway 3; and that the Commission granted the authority requested.

As pointed out by the Commission in its report, the Commission, through the joint board which heard that particular matter, relied upon DeCamp's allegation that DeCamp had the requisite authority to operate over the Parkway in East Orange and Bloomfield; and, upon the recommendation and order of the joint board which became effective on January 7, 1957, by operation of law, the Commission granted the requested authority over the Parkway in Nutley and Clifton. An examination of the operating authority granted therein does not, however reveal specific authority over the Parkway in East Orange and Bloomfield as a result of those proceedings. It is obvious that neither the board nor the Commission questioned or made an issue of DeCamp's assertions that DeCamp had the requisite authority over the Parkway in East Orange and Bloomfield in those proceedings.

The mere fact that such assertions were accepted without question does not, as indicated in the Commission's report, make that issue unassailable in these proceedings. P. Salduti & Son, Inc. v. United States, 210 F.Supp. 307 (D.C.N.J. 1962).

■ DeCamp also urges that the doctrine of res adjudicata applies to bar the determination of the issue of DeCamp's operation of its Route 77 services over the Parkway in East Orange and Bloomfield. DeCamp argues the applicability of res adjudicata on the basis of the Commission's previous determinations in the aforementioned proceedings in Docket MC 109312, Sub No. 23, DeCamp Bus Lines, Extension Garden State Parkway, 69 M.C.C. 818. As previously expressed, the failure of the joint board and the Commission in those proceedings to question DeCamp's assertion of authority over the Parkway in East Orange and Bloomfield does not bind the Commission. Neither this fact nor the fact that the Commission was made aware of DeCamp's intention to operate over the Parkway through East Orange, Bloomfield, Nutley and Clifton, to Highway 3, justify an inference that the issue of DeCamp's authority over the Parkway in East Orange and Bloomfield was determined on its merits. It would certainly create an undue burden upon the Commission to require it to question every possible assertion of authority in connection with an application for the issuance of a certificate of public necessity and convenience so as to avoid the application of the doctrines of res adjudicata, collateral estoppel or direct estoppel. Moreover, these doctrines may not be raised against the United States or its alter ego, the Interstate Commerce Commission under these circumstances. See Simpson v. United States, supra, 200 F.Supp. 372, 379; Pennsylvania Water & Power Co. v. Federal Power Commission, 74 App.D.C. 351, 123 F.2d 155 (1941), cert. den. 315 U.S. 806, 62 S.Ct. 640, 86 L.Ed. 1205; Churchill Tabernacle v. Federal Communications Commission, 81 U.S.App.D.C. 411, 160 F.2d 244

(1947); Sims Motor Transport Lines, v. United States, supra, 183 F.Supp. 113, 119.

The next argument presented for this Court's consideration is that the Commission failed to apply the established law in the interpretation of "use of city streets and connecting highways" found in DeCamp's grandfather certificate. Specifically, DeCamp refers to its application in Docket MC 109312, Sub No. 6, decided by the Commission on October 3, 1949, wherein the Commission is alleged to have interpreted DeCamp's city street certificates to include authorized operation over any city streets within the municipalities or municipality or between the several municipalities, without reference or limitation as to direction (i. e., east-west or north-south). DeCamp also cites other cases wherein the Commission is alleged to have interpreted city street certificates contrary to and inconsistently with its interpretation in the instant case. DeCamp argues that in ignoring such prior decisions, the Commission's findings and conclusions in the case at bar are arbitrary, capricious, discriminatory and unlawful.

■ Without passing on the question of any such alleged inconsistency, or ascertaining, by comparison, similarity or dissimilarity, the Court deems it sufficient to state that the Court is not concerned with such alleged inconsistency. Each case must be decided in light of its own facts. The Commission, created by Congress and appointed by law to interpret its own certificates, should be free to draw from its experience and accomplish this end with the minimum interference allowed by law. In the exercise of its expertise, the Commission should not be bound by its prior findings in similar cases and it has been so held. As stated in Northern Pac. R. Co. v. United States, 41 F.Supp. 439, at page 446 (D.C.Minn. 1941), aff'd. 316 U.S. 346, 62 S.Ct. 1166, 86 L.Ed. 1521 (1942):

"* * * It is not necessary to discuss the departure, if any, be-

tween the present order and the prior views of the Commission. Suffice it to say that the decisions are not stare decisis. An administrative agency may change its position.";

in Virginian R. Co. v. United States, 272 U.S. 658, at pages 665 and 666, 47 S.Ct. 222, at pages 225–226, 71 L.Ed. 463 (1926):

"This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it.";

and in Ace Lines, Inc. v. United States, supra, 197 F.Supp. 591, at page 599:

"An administrative body, such as the Commission, is not bound by the rule of stare decisis, and inconsistency of its holding with prior holdings in and of itself does not make the decision arbitrary, (citing cases)."

See also: Shein v. United States, supra, 102 F.Supp. 320; and Beard-Laney, Inc. v. United States, 83 F.Supp. 27 (D.C.E.D. S.C.1949), aff'd 338 U.S. 803, 70 S.Ct. 64, 94 L.Ed. 486 (1949).

This Court now turns to ascertain if there is a rational basis for the Commission's interpretation.

Except for the grant of authority issued to DeCamp in Certificate No. MC 109312, Sub No. 23, DeCamp's operation of its Route 77 service over the Garden State Parkway in Bloomfield and East Orange, New Jersey, between New York, New York and Morristown, New Jersey, was determined by the Commission to be unauthorized. The Commission concluded that said operation over the Parkway could not be lawfully performed as contended by DeCamp, either under the grant of authority of paragraph 3 of DeCamp's Certificate No. MC 109312 (hereinafter called Regular Route (3)) or by tacking the grants of authority of paragraph 1 of said certificate (hereinafter called Regular Route (1)) and Regular Route (3).[5]

The Commission refused to adopt DeCamp's construction of the grant of authority in Regular Route (3), to wit: "that under the New York-Orange route, operation is authorized from Newark to Orange via any of the intermediate municipalities and these include Bloomfield and East Orange."[6] Instead, the Commission found that the grant of authority in Regular Route (3) "clearly contemplated an east-west operation rather than a north-south operation." The Commission stated "it would be unreasonable to interpret its (DeCamp's) certificates so as to authorize service to areas not included in its original proposal. Otherwise it could use the alleged defect in its certificate as a device to serve all points in New Jersey as intermediate points in connection with its authorized service between New York and Orange."

It may be readily observed by reference to a map of the areas in question that Regular Route (3) between New York and Orange, over city streets and connecting highways *via Newark* is generally an east-west operation. Likewise, it appears that in order to operate over city streets and connecting highways by way of Newark to Orange it is only necessary to

---

5. "REGULAR ROUTES:
"Passengers and their baggage,
"Between New York, N. Y., and Caldwell, N. J., serving all intermediate points:
(1) From New York via the Holland Vehicular Tunnel to Jersey City, N. J., thence over city streets and connecting highways via Arlington, Kearny, Belleville, and North Newark, N. J., to Bloomfield, N. J., and thence over Bloomfield Avenue to Caldwell, N. J., and return over the same route.

"Between * * * *
"(2) * * * * * *
"Between New York, N. Y., and Orange, N. J., serving all intermediate points:
"(3) From New York to Jersey City, N. J., as specified above, and thence over city streets and connecting highways via Newark, N. J., to Orange, and return over the same route."

6. Reply Brief of Plaintiff, pages 13 and 14.

traverse over one adjoining municipality. Clearly, the most direct route from Newark to Orange would entail traversal of the adjoining municipality of East Orange. But certainly there are other more indirect and circuitous routes which could be utilized and which would necessitate traversal of one or more adjoining or even intermediate municipalities. However, it must be conceded that it would be extremely unreasonable to permit a motor carrier, by utilizing one or more of such indirect or circuitous routes, to operate the length and breadth of the State of New Jersey, over city streets and connecting highways via Newark to Orange. To permit a carrier to interpret a certificate, such as the one under consideration, to authorize such operations would be a gross distortion of the rights conferred and would create chaos. To say that the interpretation advocated by DeCamp would not approximate or be tantamount to such unreasonableness is to ignore the innumerable possibilities of logical extension of operations to that point. Certainly DeCamp's traversal of the Parkway in Bloomfield and East Orange in an unwarranted and somewhat protracted north-south direction is a convincing portent of such a possibility.

It is true that DeCamp's Regular Route (3), insofar as it authorized service through Newark to Orange, is unrestricted, but to interpret its grant of authority so broadly as to authorize extensive indirectness or circuity can hardly be said to be reasonable. The approach and interpretation adopted by the Commission, construing the grant of authority as a contemplated east-west operation and declaring an inordinate amount of indirectness or circuity thereunder unlawful, stands upon a firm and rational basis. The interpretation does not modify, change, amend or otherwise revoke the rights held by DeCamp under this grant of authority but merely defines the rights possessed by DeCamp under the grant.

Although DeCamp has insisted the sole grant of authority necessary to support its questioned operations rests in the grant stated in Regular Route (3), it does challenge the Commission's determination that Regular Route (3) and Regular Route (1) cannot be tacked to provide the requisite authorization for such operation. It is clear that the Commission determined that both grants of authority were east-west operations and that DeCamp did not intend to perform a through service between East Orange and Bloomfield, in a north-south operation, when the separately stated authorities were granted.[7]

It also appears that the Commission arrived at the same result regarding the issue of tacking, as the examiner who held:

"While the right of a motor common carrier to tack separate grants of unrestricted authorities, either regular or irregular, is well settled, there are certain prerequisites which must be met before tacking is authorized. These are: (1) There must be a 'point of service' common to both operating authorities, (2) physical operation must be rendered through such common point, and (3) the character of the authorized service must be maintained. Compared Zirbel-Investigation of Operations, 53 M.C.C. 684. Here in the opinion of the examiner one or more of these conditions are not met. While defendant has essentially non-radial authority both in East Orange and in Bloomfield, because it may operate over any and all city streets and connecting highways *in each,* it does not follow that this results in a point or points of service common to both authorities. It is patent that authority to serve all city streets *in* a given municipality does not authorize service at any points *in* any other municipality regardless of the latter's

7. See pages 206, 207 of this Opinion.

relative location to the former. Compare Farmer-Purchase-Crouse, 45 M.C.C. 267. Nor is this defect cured by authority in defendant's certificate allowing it to operate over 'connecting highways,' for the clear intent of that phrase is to authorize operations over connecting highways between the termini set forth in the particular authority and *in the* sequence of intermediate points specifically named therein. There is still another reason why defendant may not tack the concerned authorities. It admittedly abandoned the Newark-New York segment of its Route Nos. 145–146, and accordingly has not preserved the character of the authorized service as is required by part (3) of the aforesaid conditions precedent to authorized tacking." (Exhibit D, page D–5.)

The Commission, however, did go further to state that one regular route extending to the boundary of a municipality may be joined to another route extending from the same point on the boundary into a contiguous municipality if it appears such was the intent when the two authorities were granted, and then concluded such was not DeCamp's intention. Finally, the Commission felt that the case at hand was undistinguishable from Farmer-Purchase-Crouse, 45 M.C.C. 267, wherein it was held that tacking would not be permitted unless there is a point served in common or common gateway under separate authorized routes. An analysis of the two separate routes in question and consideration of the nature of the same does not disclose such a common gateway by which a through service may be performed by tacking the right to serve East Orange under Regular Route (3) to the right to serve the adjoining municipality of Bloomfield under Regular Route (1), and thus it appears that the cited case is controlling as indicated by the Commission.

▇▇▇▇ The fact that the route over the Parkway in Bloomfield and East Orange

may be the most practical or the best one does not bear upon issue if it is unauthorized and not within the scope of lawful operations. It certainly is not the only route and was not used previous to its existence. Even if it had been used for a considerable period of time, a motor carrier acquires no prescriptive rights by operation over an unauthorized route.

The rejection by the Commission of the assertion of authority to perform the questioned operation under the grant of authority in Regular Route (3) or by tacking said grant with the grant in Regular Route (1) is not without justification and the Commission's determination that DeCamp's operations were unlawful is warranted. The interpretation placed by the Commission on DeCamp's certificates is founded upon a rational basis and does not appear to be clearly erroneous.

▇▇▇▇ DeCamp's final contention is that the procedures followed by the Commission denied to it fair hearing and "Due Process." Mainly, DeCamp urges it was not afforded the opportunity to be heard upon the issues on which the examiner and the Commission made their determinations. Suffice it to say that the issue of DeCamp's unauthorized operations certainly encompassed the issues relating to the derivation of authority for the questioned operations, such as tacking, segmentation or interpretation of city street certificates.

In reviewing the proceedings below, this Court cannot say that DeCamp was denied the opportunity to be heard. To the contrary, the record discloses DeCamp had ample opportunity to defend and substantiate its position on all such related issues. See New York Cent. & H. R.R. Co. v. Interstate Commerce Commission, 168 F. 131, 138 (C.C.S.D.N.Y.1909). Accordingly, DeCamp's contention is held to be without merit.

The Commission's actions in this matter are not arbitrary or capricious, they do not constitute an abuse of discretion; they are not clearly erroneous or other-

**210**

wise not in accordance with the law. Hence, the order of the Commission cannot be enjoined, set aside, annulled or suspended.

Therefore, the Order of the Commission will be affirmed. An appropriate order will be prepared by counsel and entered, dismissing the complaint herein with prejudice to the plaintiff.