## NORTHERN PACIFIC RAILWAY CO. ET AL. *v.* UNITED STATES ET AL.

No. 927.   Argued April 29, 30, 1942.—Decided May 25, 1942.

*Mr. J. P. Plunkett*, with whom *Messrs. L. B. da Ponte, M. L. Countryman, Jr., F. G. Dorety,* and *R. J. Hagman* were on the brief, for appellants.

*Mr. Smith R. Brittingham, Jr.,* with whom *Solicitor General Fahy, Assistant Attorney General Arnold,* and *Messrs. Robert L. Pierce, Daniel W. Knowlton,* and *E. M. Reidy* were on the brief, for the United States et al.; and *Mr. Neal E. Williams* submitted for the Public Service Commission of North Dakota et al., appellees.

PER CURIAM.

This is an appeal from a decree of the District Court, 41 F. Supp. 439, dismissing a suit to set aside an order of the Interstate Commerce Commission, 245 I. C. C. 11, requiring the appellant railroads to cease and desist from maintaining certain absorption rules and practices found to be unduly discriminatory and unreasonable, and therefore offensive to the Interstate Commerce Act, 49 U. S. C. §§ 1 (6), 3 (1), 15 (1).

Upon complaint of the Minneapolis Traffic Association, representing grain interests in Minneapolis, St. Paul, and Duluth, Minnesota, and Superior, Wisconsin, the Commission instituted an inquiry into the practices of the rail carriers at the complaining markets, with respect to absorption of connecting-line switching charges on so-called noncompetitive or local shipments (i. e., originating at points served by only one railroad) of grain, grain products, and seeds. After extensive hearings, the Commission found that at the complaining markets the railroads generally absorbed the switching charges on competitive traffic (i. e., originating at points served by more than one rail-

road) but not on noncompetitive or local traffic, while at all other markets in central-western territory the carriers absorbed the switching charges on both competitive and noncompetitive shipments. This practice, the Commission concluded, was wholly at variance with the general purpose of the grain-rate structure to bring about "an adjustment under which the rates to and from all western markets would be on relatively the same level, or an adjustment under which the rates to and from the markets would approximate a mileage parity." 245 I. C. C. 11, 13. It was further found that the carriers' absorption practices at the complaining markets were supported neither by revenue considerations nor sound transportation factors, and that the widespread absorption of switching charges on noncompetitive traffic at other important markets was strong evidence of the reasonableness of such practice and of the unreasonableness of the carriers' refusal to absorb such charges at the complaining markets. Upon the basis of these findings, the Commission entered the order challenged on this appeal.

Neither the validity of the Commission's findings nor its compliance with procedural safeguards is assailed here. The order is attacked on the ground that the Commission has exceeded its constitutional and statutory powers.

Section 1 (6) of the Interstate Commerce Act requires common carriers subject to the Act "to establish, observe and enforce . . . just and reasonable regulations and practices affecting classifications, rates, or tariffs, . . . and all other matters relating to or connected with the receiving, handling, transporting, storing, and delivery of property . . . which may be necessary or proper to secure the safe and prompt receipt, handling, transportation, and delivery of property . . . upon just and reasonable terms, and every unjust and unreasonable classification, regulation, and practice is prohibited and declared to be un-

lawful." Section 3 (1) makes it unlawful for common carriers to give "any undue or unreasonable preference or advantage to any particular person, . . . locality, . . . region, district, territory, or any particular description of traffic, in any respect whatsoever; or to subject any particular person, . . . locality, . . . region, district, territory, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever . . ." Section 15 (1) authorizes and empowers the Commission, upon finding that a practice of carriers is "unjust or unreasonable or unjustly discriminatory," to make an appropriate cease-and-desist order.

We are of opinion that these statutory provisions furnish ample authority for the order made here by the Commission. The findings sufficiently support the Commission in undertaking to remove a discrimination as between grain shippers and markets. As was noted only the other day in *Board of Trade* v. *United States,* 314 U. S. 534, 548, involving another phase of the elaborate and delicately balanced grain rate structure, "We certainly have neither technical competence nor legal authority to pronounce upon the wisdom of the course taken by the Commission." Since the action of the Commission was based upon relevant transportation considerations and the Constitutional contentions are plainly without merit, the order will not be set aside. *Los Angeles Switching Case,* 234 U. S. 294; *Board of Trade* v. *United States, supra.*

*Affirmed.*