CHESAPEAKE AND OHIO RAILWAY COMPANY, Clinchfield Railroad Co. and Louisville & Nashville Railroad Co., Plaintiffs,

v.

UNITED STATES of America & Interstate Commerce Commission, Defendants,

and

Southern Railway Co., Interstate Railroad Co., Brimstone Railroad Co., Cincinnati, New Orleans & Texas Pacific Railway Co., Harriman & Northeastern Railroad Co., Kentucky & Tennessee Railway, & Tennessee Railway Co., Intervening Defendants by order of 3/1/68,

Property Owners' Committee and Harlan Fuel Company, Intervening Defendants by order of 3-19-68.

Civ. A. No. 5839.

United States District Court
W. D. Kentucky,
Louisville Division.

April 9, 1969.

Benson T. Buck, Harry N. Babcock, John W. Hanifin, Cleveland, Ohio, for Chesapeake & Ohio R. R. Co.

Joseph L. Lenihan, James W. Hoeland, Elbert R. Leigh, Louisville, Ky., Louisville & Nashville R. R. Co. for Louisville & Nashville R. R. Co., Joseph E. Stopher, Louisville, Ky., for all plaintiffs.

Ramsey Clark, Atty. Gen., U. S. Dept. of Justice, Thurgood Marshall, Sol. Gen., U. S. Dept. of Justice, Washington, D. C., Robert W. Ginnane, Gen. Counsel, ICC, Manny H. Smith, Atty., ICC, Washington, D. C., Ernest W. Rivers, U. S. Atty., Louisville, Ky., William M. Maddox, Washington, D. C., Homer S. Carpenter, Washington, D. C., for defendants.

Gerald Kirven, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville,

Ky., Richard J. Flynn and, David J. Boyd, Sidley & Austin, Washington, D. C., Henry J. Karison, Washington, D. C., for intervenor-defendants.

## MEMORANDUM OPINION, ORDER AND JUDGMENT

Before CELEBREZZE, Circuit Judge, and BROOKS and GORDON, District Judges.

PER CURIAM.

This action was brought before this Three-Judge Court under the provisions of 28 U.S.C. § 1336, 49 U.S.C. § 17(9), and 5 U.S.C. § 706, by The Chesapeake & Ohio Railway Company (C&O), Clinchfield Railway Company (Clinchfield), Louisville and Nashville Railroad Company (L&N), all common carriers by railroad subject to the jurisdiction of the Interstate Commerce Commission, to enjoin, set aside, and annul orders of the Commission, Division 2, entered March 27, 1967, and November 2, 1967, in Dockets No. 34396, Coal, Kentucky, Tennessee and Virginia to North Carolina, and No. 34418, Property Owners' Committee v. Brimstone R. Co. As required by law, the United States of America was named a defendant, as was the Interstate Commerce Commission.

Intervening defendants are Southern Railway Company, Interstate Railroad Company, Brimstone Railroad Company, The Cincinnati, New Orleans, and Texas Pacific Railway Company, Harriman and Northeastern Railroad Company, Kentucky and Tennessee Railway, and Tennessee Railroad Company, common carriers by railroad referred to collectively as "Southern"; the Property Owner's Committee (POC), an unincorporated association of coal mining companies and coal land owners; and Harlan Fuel Company, a partnership engaged in the mining and sale of bituminous coal in the Harlan District of Eastern Kentucky. Intervening defendants are parties in interest to the proceedings before the Commission involved in this action.

On January 26, 1969, oral argument was heard before this Court.

Effective February 16, 1964, Southern published reduced single-car and concentration commodity rates on bituminous fine coal, conditioned upon the use of open-top cars of not less than 70-ton capacity, from origin groups of mines served by the Southern in eastern Kentucky, Tennessee, and southwestern Virginia, to Skyland, a local point on the Southern, and certain named intermediate points. By reducing rates by 45 cents per ton, Southern secured the use of coal, rather than natural gas, at the new electric-generating facilities of the Carolina Power and Light Company at Skyland. This publication was protested by the Property Owner's Committee, an association of coal mine operators and coal leasing companies located in the eastern Kentucky origin districts of Big Sandy and Harlan, served by the C&O and L&N, respectively. An investigation proceeding was instituted and designated Docket No. 34396.

By a complaint filed April 9, 1964, POC sought the restoration of the rate relationships between Harlan and Big Sandy origins, on the one hand, and origins on the Southern, on the other, which had existed prior to February 16, 1964. In support of its complaint, POC alleged that L&N, C&O, Clinchfield, and Southern had failed to establish and maintain just, reasonable, nondiscriminatory, nonpreferential, and nonprejudicial joint rates and charges for the carriage of coal to Skyland from C&O origins in the Big Sandy district and L&N origins in the Harlan district. The complainants further alleged that Southern maintained rates, charges, rules, regulations, and practices applicable to the transportation of coal to Skyland which unjustly discriminated in favor of and unduly preferred mining operations along the Southern in Kentucky, Tennessee, and Virginia, and unduly prejudiced operations along the lines of C&O and L&N in the Big Sandy and Harlan districts, respectively. Third, complainants alleged that the joint rates from Big

Sandy and Harlan to Skyland were in excess of just and reasonable rates in violation of Section 1 of the Act, 49 U.S. C. § 1, and that their maintenance vis-a-vis the maintenance of lower joint rates from other origin mines to Skyland violated Sections 2 and 3 of the Act, 49 U.S.C. §§ 2 and 3. Finally, certain rates and minimum weight provisions were alleged to be destructive competitive practices in violation of the National Transportation Policy. The complaint proceeding was designated Docket No. 34418.

A hearing in the two proceedings was held before an examiner of the Commission in September and October, 1964.[1] In Docket No. 34396, the investigation proceeding, the examiner found that Southern's reduced rates were just and reasonable and otherwise lawful. In Docket No. 34418, the complaint proceeding, the examiner found that the existing joint rates to Skyland from mine origins in the Harlan and Big Sandy districts served by plaintiffs were not reasonably related to the reduced rates to Skyland from the mine origins served by Southern. He held that the maintenance of these higher joint rates by plaintiffs and Southern was unduly prejudicial to shippers located at the L&N and C&O origins and that reasonably related joint rates, which reflected the rate differentials existing on February 15, 1964, should be instituted. He also found that Southern's tariff rules, regulations, and practices limiting the applicability of such reasonably related joint rates with plaintiffs to the use of cars of at least 70-ton capacity were unjust and unreasonable and created undue preference and prejudice between shippers affected thereby. Exceptions to the examiner's recommended report and order were filed by POC, plaintiffs, and Southern. Thereafter, various replies were filed.

On March 27, 1967, the Commission, Division 2, issued its report and order in the two proceedings, 329 I.C.C. 572. In Docket No. 34396, the Commission found that Southern's restriction of the reduced rates from origins on its line to high-capacity cars of not less than 70 tons did not constitute any violation of the Act and reaffirmed the examiner's finding that Southern's reduced single-car and concentration rates on bituminous fine coal from Southern's origins to Skyland, and the rules and regulations applicable thereto, were just and reasonable. Consequently, the Commission ordered that the investigation proceeding be discontinued. (329 I.C.C. at 576–78, 587). This aspect of the Commission's decision is not challenged in the present action. In the complaint proceeding, Docket No. 34418, the Commission found that the refusal by Southern to enter into reduced joint rates to Skyland from origins in the Harlan and Big Sandy districts, which permitted the use of less than 70-ton cars, did not constitute a violation of Sections 1(4), (5), (6), 2 or 3 of the Act, and that the instant record did not justify prescription of such a rate basis pursuant to Section 15(1) of the Act. However, the Commission further found that the refusal by plaintiffs to participate in such reduced joint rates from their Harlan and Big Sandy origins to Skyland conditioned on the use of cars with a minimum capacity of 70 tons was not justified on this record and that such refusal, in effect, had closed through routes in a commercial sense in violation of the provisions of Section 1(4) and the primary purpose of Section 15(3) of the Act. The Commission found that plaintiffs' refusal constituted an unjust and unreasonable practice in violation of Section 1(6) of the Act, and the Commission entered the order directing the establishment of reduced joint rates from Harlan and Big Sandy origins, restricted to movements in cars with a capacity of not less than 70 tons.

1. The two proceedings were heard separately to preserve the rights of the parties with respect to such procedural matters as opening and closing and burden of proof; however, by stipulation the evidence introduced in one proceeding was incorporated into the record in the other to the extent relevant.

The Commission found that the maximum annual consumption of the power plant at Skyland (500,000 tons of fine coal) can easily be transported to Skyland in a maximum of about 350 cars of 70-ton capacity, each car performing 20 trips per year. (329 I.C.C. at 581). If the annual tonnage required at Skyland were divided equally between the Southern, L&N, and C&O origins, L&N and C&O each would be required to provide about 117 cars of 70-ton capacity to the service to Skyland, an allocation necessitating a loss of service of only a negligible portion of the less than 70-ton car fleets of L&N and C&O. Since about 30 per cent of L&N's coal car fleet and slightly less than 50 per cent of C&O's fleet consists of 70-ton capacity cars, the requirement to use such higher capacity cars would not cause any material disruption of the car distribution systems of these two carriers. (329 I.C.C. at 581–582).

The Commission further found that with respect to savings in carrier costs per ton, as enunciated in Bituminous Coal, Tenn., Ky. & Va. to N. C., Tenn. & Va., 325 I.C.C. 548, at 562–63, 577–78, real and potential savings derive from the use of larger cars because of several factors, including less depreciation and return on investment which per ton of capacity makes new large cars cheaper to own than new small cars, and also operating costs per ton are reduced because fewer tare miles and trailing gross miles are associated with the larger cars. (329 I.C.C. at 583–84). The Commission determined that the connecting lines failed to establish that providing cars with a capacity of not less than 70-tons for the movements to Skyland would entail any extra cost, and the evidence clearly established substantial savings from the use of high-capacity cars.

In Docket No. 34418, on the basis of the record as a whole, and particularly the subsidiary findings set forth above respecting the availability of 70-ton cars, the insignificant effect that the required use of 70-ton cars would have on the 50-ton fleets of L&N and C&O, the greater economies and the higher return over out-of-pocket costs to be realized by all rail defendants from the use of high capacity equipment, and the denial of marketing opportunities to shippers from Harlan (L&N) and Big Sandy (C&O) origins, the Commission concluded that the practice of L&N, C&O, and Clinchfield of refusing to participate with the Southern in reduced joint single-car and concentration rates, restricted to the use of cars having a minimum capacity of 140,000 pounds, and of refusing to reestablish the rate relationship which existed prior to February 16, 1964, between L&N and C&O origins, on the one hand, and Southern origins, on the other, on the movement of bituminous fine coal to Skyland, N. C., is unjust and unreasonable, and in violation of Section 1(6) of the Act. (329 I.C.C. at 587).

The Commission made the following findings with respect to plaintiffs' evidence that furnishing 70-ton cars for movement to Skyland would result in injurious consequences to them:

"Although it is argued that the extra cost and effort of providing only cars of 70-ton capacity outweighs the benefits of their use, we are not so persuaded. The evidence clearly establishes substantial savings from the use of the larger cars and there is nothing here to establish any extra cost in connection with the provision of such cars.

" * * * The evidence clearly and convincingly establishes that the use of high-capacity cars is more economical than less than 70-ton cars and all railroads participating in this traffic under the proposed reduced rates should realize a substantially higher over out-of-pocket costs than would be realized if less than 70-ton cars were used in the service. * * * " 329 I.C.C. at 585.

The record before the Commission shows that, based on Rail Form A applications, the out-of-pocket cost of transporting coal from Harlan to Skyland is 49.35 cents per ton less in 70-ton cars (loaded to 75 tons) than in 50-ton

cars (loaded to 55 tons), and from Big Sandy to Skyland, 48.82 cents per ton less. (329 I.C.C. at 580). The only specific evidence of added costs cited by plaintiffs (Br., p. 16) is testimony offered by Southern that the cost of an added switch, if it were required to classify 70-ton cars for movement to mines loading coal for Skyland, would be $3.65 per car, or less than 5 cents per ton, for C&O and $2.60 per car, or less than 3.5 cents per ton for L&N (Tr. 827–828). If these added costs were incurred, we find that they would be so small as not to affect materially the Commission's findings on this record of the substantial savings from the use of high-capacity equipment. The record also contains evidence in the form of switching studies of Southern operations involving furnishing large cars to order which shows that the economies in switching time produced by using large cars might well offset or exceed any added switching costs required (Tr. 132–35, 157, 187–201; Exhs. 47, 72, 133). In its report in these proceedings, the Commission expressly reaffirmed its conclusions with respect to the real and potential savings in carrier costs per ton derived from the use of larger cars set forth in Bituminous Coal, Tenn., Ky. & Va. to N. C., Tenn. & Va., 325 I.C.C. 548, (329 I.C.C. at 583–584). In that report, the Commission stated at 325 I.C.C. p. 577:

> "In the movement of a specific annual tonnage of coal, the potential savings in interchange and classification switching time and costs through the use of one 100-ton car, as compared to two 50-ton cars, are obvious."

Plaintiffs' claim of added burdens are premised on the contention that the Commission's order would require them to furnish 70-ton cars to each of the numerous mines they serve in the Harlan and Big Sandy districts (Pl.Br., p. 18). The record shows that the Carolina Power & Light Company purchases coal for the Skyland plant on the basis of monthly contracts from a limited number of mines (generally two or three, and not more than five). (Tr. 665, 685–689). Plaintiffs admit that, for other movements, they presently furnish cars of a particular size to shippers upon reasonable request (Tr. 236–37, 267, 557; Ex. 80, p. 7; Pl.Rep.Br., pp. 3–4).

This Court has jurisdiction of the parties and the subject matter in this cause. 28 U.S.C. §§ 1336, 1398; 5 U.S.C. § 706.

■ Under Section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, the scope of this Court's review of the instant order of the Commission is limited to determining whether the order is arbitrary or not in accordance with the law and whether the Commission's findings are supported by substantial evidence. Louisville and Nashville Railroad Co. v. United States, 268 F.Supp. 71, 75 (D.C.1967), rev'd on other grounds sub nom American Commercial Lines, Inc. v. Louisville & N. R. Co., 392 U.S. 571, 88 S.Ct. 2105, 20 L.Ed.2d 1289 (1968).

■ In determining whether the findings of the Commission challenged by plaintiffs are arbitrary or capricious or unsupported by substantial evidence, the Court is not free to substitute its judgment for that of the Commission as to the weight of the evidence or the inferences to be drawn from the evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Corn Products Refining Co. v. FTC, 324 U.S. 726, 739, 65 S.Ct. 961, 89 L.Ed. 1320 (1927); FTC v. Pacific States Paper Trade Ass'n, 273 U.S. 52, 63, 47 S.Ct. 255, 71 L.Ed. 534 (1927); Illinois Central R. Co. v. Norfolk & Western R. Co., 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Consolo v. Federal Maritime Commission, 383 U.S. 607, 619–620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); 4 Davis, Administrative Law § 29.05 (1958).

■ The Commission's findings, including those findings with respect to the availability of 70-ton cars to all carriers participating in the routes to Skyland, the insignificant effect that the required use of 70-ton cars would have on the 50-ton fleets of the plaintiffs, the greater economies and higher return over out-of-pocket costs to be realized by all carriers participating in routes to Skyland from the use of high capacity equipment, and denial of marketing opportunities to shippers in the Harlan and Big Sandy districts (see 329 I.C.C. at 587), are supported by substantial evidence.

■ The Commission's report and order of March 27, 1967, 329 I.C.C. 572, which finds that the practice of L&N, C&O, and Clinchfield of refusing to participate with the Southern in reduced joint single-car and concentration rates, restricted to the use of cars having a minimum capacity of 140,000 pounds, and of refusing to re-establish the rate relationship which existed prior to February 16, 1964, between L&N and C&O origins, on the one hand, and Southern origins, on the other, on the movement of bituminous fine coal to Skyland, N. C., is unjust and unreasonable and in violation of 49 U.S.C. § 1(6), contains a stated rational basis and, therefore, is neither arbitrary nor capricious.

■ The Commission's finding, that the refusal of the L&N, C&O, and Clinchfield to participate in reduced joint rates conditioned on the use of cars having a minimum capacity of 140,000 pounds and to furnish such cars from their existing car fleets, was an unjust and unreasonable practice in violation of 49 U.S.C. § 1 (6), and its order directing plaintiffs and Southern to enter into joint rates restricted to movements in such cars, are not inconsistent with or in contravention of the decision of the Supreme Court in United States v. Pennsylvania R. R. Co., 242 U.S. 208, 37 S.Ct. 95, 61 L.Ed. 251 (1916) and are in accord with the interpretation of that opinion enunciated by the Commission in Trogan Scrap Iron Corp. v. Boston & M. R., 270 I.C.C. 727, at 729–30.

■ 49 U.S.C. § 15(1) is the implemental provision of Part I of the Interstate Commerce Act which, expressly phrased in the disjunctive, empowers the Commission to condemn and correct any practice affecting rates found to be unlawful under 49 U.S.C. § 1(6) as well as any "rate, fare, or charge" found to be unlawful under 49 U.S.C. § 1(5). Therefore, since the Commission, acting under Section 15(1), found the above existing practice of the L&N, C&O, and Clinchfield to be unjust and unreasonable, and in violation of 49 U.S.C. § 1(6), before prescribing a new practice by ordering L&N, C&O, Clinchfield, and Southern to join in the reduced rates restricted to cars with a minimum of 70-tons from origins on L&N and C&O to Skyland, N. C., the Commission was not required, as a prerequisite for its action here, to find that the existing higher rates from origins on L&N and C&O to Skyland were unjust and unreasonable and in violation of 49 U.S.C. § 1(5). The Commission's order was within the statutory powers conferred by 49 U.S.C. §§ 1(6) and 15(1). Great Northern Ry. Co. v. United States, 81 F.Supp. 921, 925 (D. Del., 1948), aff'd per curiam, 336 U.S. 933, 69 S.Ct. 750, 93 L.Ed. 1093 (1949); Northern Pacific R. Co. v. United States, 41 F.Supp. 439, 446 (D.Minn. 1941), aff'd 316 U.S. 346, 62 S.Ct. 1166, 86 L. Ed. 1521 (1942).

■ In this Court, plaintiffs, L&N, C&O and Clinchfield raise for the first time the contention that Southern's refusal to enter into the reduced joint rates conditioned on use of less than 70-ton cars constituted a refusal to provide reasonable facilities for interchange in violation of 49 U.S.C. § 3(4). Since plaintiffs did not raise this argument before the Commission (see Petition for Reconsideration of May 15, 1967), it is not properly before this Court. United States v. Hancock Truck Lines, 324 U.S. 774, 778–780, 65 S.Ct. 1003, 89 L.Ed. 1357 (1945); United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 36–37, 73 S.Ct. 67, 97 L.Ed. 54 (1952). Even if it were, such an argument would

lack merit in view of the fact that Southern has maintained both the reduced rates made effective February 16, 1964, and the prior rates applicable to cars of all sizes in effect prior to that date, and that the publication of reduced joint rates restricted to the use of high-capacity equipment (when the Commission's order becomes effective) will not result in cancellation of the existing higher joint rates not so restricted. Under these alternating rates all equipment destined to Skyland tendered for interchange to Southern by L&N and C&O-Clinchfield will be received and handled at the applicable rate.

Since the Commission found that the failure of the carriers to agree on the minimum capacity of the cars to which reduced joint rates from Harlan and Big Sandy would be applicable precluded shippers at those origins from competing for traffic at Skyland, and further found that, in the circumstances of this case and on the record before it, that the refusal of the L&N, C&O, and Clinchfield to enter into reduced joint rates conditioned on the use of cars having a minimum capacity of 70-tons was unjust and unreasonable, while the refusal of Southern to join in rates applicable to cars with a capacity of less than 70-tons was lawful, the Commission properly concluded that it was the conduct of L&N, C&O, and Clinchfield which had closed the routes from Harlan and Big Sandy to Skyland in a commercial sense in contravention of the obligation of carriers under Section 1(4) to provide reasonable facilities for the operation of through routes and of the basic purpose of Section 15(3) of ensuring adequate transportation service for shippers. The Commission's conclusion that such conduct was an unjust and unreasonable practice in violation of Section 1(6), is based upon a correct interpretation and application of the relevant statutory provisions. Accordingly, the holding is in accordance with the law.

Since the findings in the Commission's report and order are supported by substantial evidence, and the Commission's conclusions are fairly drawn from such findings, are not arbitrary, and are in accordance with the law, this Court holds that the report and order of the Commission of March 27, 1967, 329 I.C.C. 572, in Docket No. 34396, Coal, Kentucky, Tennessee and Virginia to North Carolina (also embracing Docket No. 34418, Property Owners' Committee v. Brimstone R. Co.), should be, and hereby is, sustained and that plaintiffs' complaint should be, and hereby is, dismissed on the merits with prejudice.