**SCOTT PAPER COMPANY and International Paper Company, Plaintiffs,**

**Terminal Railway Alabama State Docks, Plaintiff-Intervenor,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**Southern Railway Company et al., Defendant Intervenors.**

**Civ. A. No. 73–638.**

United States District Court, E. D. Pennsylvania.

March 8, 1974.

Benjamin Kuby, Klovsky, Kuby, & Harris, Philadelphia, Pa., Arthur L. Winn, Jr., Washington, D. C., for Scott and International.

Robert B. Einhorn, Philadelphia, Pa., for Terminal Railway.

Thomas E. Kauper, Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Washington, D. C., and C. Oliver Burt, III, Asst. U. S. Atty., Philadelphia, for the U. S. A.

Fritz R. Kahn, Gen. Counsel, Manny H. Smith, ICC, Washington, D. C., for ICC.

Robert Szwajkos, Philadelphia, Pa., W. A. Kimbrough, Stockman, Bedsole & Kimbrough, Mobile, Ala., H. D. Koontz, Ill. Cent. Gulf R. R., Chicago, Ill., for defendant-intervenors.

Before VAN DUSEN, Circuit Judge, and FULLAM and BRODERICK, District Judges.

## OPINION

BRODERICK, District Judge.

This is an action under the provisions of 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325 and 5 U.S.C. §§ 701–706, to set aside, annul and permanently enjoin and to remand for further proceedings free of error of law an Order of the Interstate Commerce Commission dated August 2, 1972 entered in Docket No. 35225 International Paper Company and Scott Paper Company v. The Akron, Canton and Youngstown Railroad Company, et al.

In the complaint filed December 31, 1969 with the Interstate Commerce Commission, Scott Paper Company (Scott) and International Paper Company (International) alleged, *inter alia*,[1] that the failure of the defendant railroads[2] to absorb the full amount of the switching charges of the Terminal Railway Alabama State Docks[3] (Terminal Railway) on movements of pulpwood and wood chips[4] inbound to Scott and International at Mobile, Alabama resulted in an unjust and unreasonable charge and practice in violation of Sections 1(5)[5] and 1(6)[6] of the Interstate Commerce Act.[7]

---

1. At the outset of the hearing held before a Commission Hearing Examiner in this proceeding, plaintiffs expressly withdrew the allegation that the failure of the railroads to fully absorb the switching charges violated Sections 2 and 3 of the Act, 49 U.S.C. §§ 2 and 3.

2. While 234 railroads were named defendants in the Commission proceeding, the main parties in interest were four line-haul carriers serving Mobile: Southern Railway Company (Southern), Gulf Mobile and Ohio Railroad Company, now as a result of a merger Illinois Central Gulf Railroad Company (ICG), Louisville and Nashville Railroad Company (L & N) and St. Louis-San Francisco Railway Company (Frisco). These four line-haul carriers have intervened as defendants in this action.

3. Although Terminal Railway Alabama State Docks, owned and operated by the State of Alabama, was originally named and participated in the Commission proceeding as a defendant, it joined Scott and International in this action to annul and set aside the order of August 2, 1972.

4. As originally filed, the complaint applied to the refusal of the railroads to absorb in full Terminal Railway's switching charges on movements of some 25 commodities in and out of the Mills. In May 1970, the railroads satisfied the complaint with respect to all commodities except inbound shipments of pulpwood and wood chips.

5. Section 1(5) of the Interstate Commerce Act, 49 U.S.C. § 1(5) provides:

 *Just and reasonable charges.* All charges made for any service rendered or to be rendered in the transportation of passengers or property as aforesaid, or in connection therewith, shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful.

6. Section 1(6) of the Interstate Commerce Act, 49 U.S.C. § 1(6) provides:

 *Classification of property for transportation; regulation and practices:* It is made the duty of all common carriers subject to

The complaint sought a cease and desist order, the establishment of rates and charges absorbing *in toto* the switching charges, and the award of reparations for the alleged excess previously collected.

On January 18, 19 and 20, 1971 a hearing was held before an Interstate Commerce Commission (Commission) Hearing Examiner. After the filing of briefs by the various parties, the Examiner's report and recommended order, dated July 30, 1971, was issued. The Examiner found that Scott and International had failed to show that the railroads' refusal to absorb the full amount of the switching charges of Terminal Railway resulted in an unjust and unreasonable charge or practice in violation of Section 1(5) and 1(6) of the Act, and recommended the dismissal of the complaint.

Scott and International filed exceptions to the report and recommended order, and on August 2, 1972, Review Board Number 4 of the Commission issued an order overruling the exceptions, adopting as its own, with some modifications, the statements of facts, conclusions and findings contained in the Examiner's report and recommended order, and dismissed the complaint. On September 8, 1972 Scott and International filed a petition for reconsideration of the August 2, 1972 order of Review Board Number 4, and this was denied by Division 2 of the Commission, acting as an Appellate Division, by order of November 22, 1972. A subsequent joint petition by Scott and International seeking a review by the entire Commission on the basis that the proceeding involved an issue of general transportation importance was denied by the Commission on January 24, 1973.

The complaint before us was filed by Scott and International on March 22, 1973, seeking to enjoin, annul and set aside the August 2, 1972 order of the Commission and seeking a remand of this case to the Commission for further proceedings free of error of law. Scott and International also requested the convening of a three-judge court pursuant to 28 U.S.C. §§ 2284 and 2325. On April 9, 1973 Chief Judge Collins J. Seitz convened a three-judge court pursuant to 28 U.S.C. § 2284. On May 29, 1973 the Court granted the motion of the four line-haul railroads to intervene as defendants in this action.[8] Terminal Railway filed a motion to intervene as a plaintiff in this proceeding on October 5, 1973, which was granted by the Court on October 31, 1973. This matter was heard before the three-judge panel on February 4, 1974.

Scott and International are major manufacturers of paper and paper products with plants served by the Terminal

the provisions of this chapter to establish, observe, and enforce just and reasonable classifications of property for transportation, with reference to which rates, tariffs, regulations, or practices are or may be made or prescribed, and just and reasonable regulations and practices affecting classifications, rates, or tariffs, the issuance, form, and substance of tickets, receipts, and bills of lading, the manner and method of presenting, marking, packing, and delivering property for transportation, the facilities for transportation, the carrying of personal, sample, and excess baggage, and all other matters relating to or connected with the receiving, handling, transporting, storing, and delivery of property subject to the provisions of this chapter which may be necessary or proper to secure the safe and prompt receipt, handling, transportation, and delivery of

property subject to the provisions of this chapter upon just and reasonable terms, and every unjust and unreasonable classification, regulation, and practice is prohibited and declared to be unlawful.

7. Scott and International also alleged that the failure of the line-haul carriers to absorb the switching charges was a violation of Section 1(4) of the Act, 49 U.S.C. § 1(4). The Hearing Examiner found there was no violation of Section 1(4), since Scott and International did not assert that reasonable facilities had not been provided for operations and that no complaint as to the lawfulness of the switching charges of Terminal Railway or the line-haul charges of the other defendants was made. This issue was not raised in this action, and the Court has not considered it.

8. *See* note 2 *supra.*

Railway in the city of Mobile, Alabama. At their plants in Mobile, Scott and International receive annually approximately 17,000 carloads of pulpwood and wood chips in interstate commerce. These cars come to their plants at Mobile over the tracks of the four line-haul defendants, via switching of inbound cars from the line-haul carriers to their plants by Terminal Railway. Terminal Railway is responsible for classification and delivery from as few as eight to as many as 72 cars of woodpulp and wood chips a day.

Prior to January 28, 1964, except for a five-week period commencing on July 1, 1963, all the switching charges of Terminal Railway, amounting to $7.14 per car, were fully absorbed by the line-haul carriers. Effective January 28, 1964, Terminal Railway increased its charge from $7.14 to $10.71 per car for switching pulpwood and wood chips in large sized cars. On November 29, 1969 the switching charge for all cars carrying pulpwood and wood chips was further increased to $11.35 per car. The line-haul carriers did not increase the amount of absorption beyond the sum of $7.14 per car, so that there remains an unabsorbed charge of $4.21 per car in connection with pulpwood and wood chips delivered to Scott and International at their plants in Mobile.

The record shows that there are some 66 paper mills located in the area south of the Ohio and Potomac Rivers and on and east of the Mississippi River (Alabama (13), Florida (9), Georgia (12), Kentucky (2), Louisiana (3), Mississippi (4), North Carolina (7), South Carolina (5), Tennessee (5) and Virginia (6)). The paper industry in this region (the South) is a major one, and approximately 500,000 carloads of pulpwood and wood chips are shipped to paper mills therein annually, under tariff schedules known as the "Modified Roanoke Rapids Scale." Since 1957 this rate has been applied uniformly throughout the South by all major railroads for both interstate and intrastate traffic.

Scott and International offered evidence at the Commission hearing that the physical terminal switching operations provided on pulpwood and wood chips by Terminal Railway are similar to those provided by the four line-haul carriers to ten other paper mills in the South. There are no switching charges published or involved at four of these locations since the plants at these four places are served only by a line-haul carrier on a direct basis. Switching charges are published at the remaining six locations by such carriers when switching for other railroads, and these switching charges range from $5.67 per car to $11.41 per car and are fully absorbed by the line-haul carriers. The number of pulpwood and wood chip cars handled at these six locations is substantially less than the number of cars handled for Scott and International at Mobile.

The Hearing Examiner found that the failure of the line-haul carriers to absorb the total switching charge on pulpwood and wood chips moving to Scott and International at Mobile was not an unreasonable practice in violation of Section 1(6) of the Act when compared with the absorption practices in the South. He based this conclusion on two grounds. First, he said that a finding of an unjust discrimination or undue preference was a prerequisite to the finding of a violation of Section 1(6) of the Act and concluded that Scott and International failed to prove either unjust discrimination or undue preference. Second, he found that Scott and International had failed to produce sufficient evidence from which a probative comparison could be made as to whether their traffic in pulpwood and wood chips delivered to their plants at Mobile moves in "like" manner with all other pulpwood and wood chips in the South. Finally, the Hearing Examiner concluded that the total amount of the charges, line-haul plus switching, was not unreasonable in violation of Section 1(5) of the Act merely because it exceeded the

level prevailing under the Modified Roanoke Rapids Scale of Rates because the Scale of Rates was not at its maximum level of reasonableness and there was no evidence in the record upon which he could base a finding that the addition of the small amount of $4.21 per car of unabsorbed switching charges would result in rates which exceeded the maximum level of reasonable charges.

Scott and International contend that the order of the Commission of August 2, 1972, which adopted "as our own" the findings, recommendations and conclusions of the Hearing Examiner, with minor modifications, must be set aside for four reasons. *First,* they claim that it was legal error to hold that "in the absence of unjust discrimination or undue prejudice the Commission cannot require a line-haul carrier to absorb a connecting line's switching charges" under Section 1(6) of the Act. *Second,* they claim that they made out a *prima facie* case in support of their contention that the unabsorbed switching charge was unreasonable in violation of Section 1(6) of the Act, and that it was legal error and an unexplained and unjustified departure from long-established Commission doctrine to find that they had not offered "sufficient evidence from which a probative comparison could be made as to whether their traffic in wood and chips moved at the assailed rates in 'like' manner with all other traffic" moving in the South. *Third,* Scott and International claim that the Commission, by adopting the finding of the Hearing Examiner that the total amount of the charge was not unreasonable in violation of Section 1(5) of the Act, made an unjustified and unexplained departure from its long-established doctrine that the best test of the reasonableness of a rate is a comparison of the assailed rate with other rates in effect on like traffic moving in the same general territory. *Fourth,* and finally, Scott and International claim it was error to deny their offer of rebuttal evidence, through an expert witness, to show that the Modified Roanoke Rapids Scale was highly profitable to the line-haul carriers.

## SCOPE OF REVIEW

The scope of the Court's review of decisions of an administrative agency of the United States such as the Interstate Commerce Commission is expressly set forth in 5 U.S.C. § 706, which provides in pertinent part:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .

(E) unsupported by substantial evidence . . .

In making the foregoing determinations, the Court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

The Courts have been reasonably consistent in their interpretations of the aforesaid statutory guidelines which limit the scope of our judicial review in these matters. One role of the Court is to determine whether the evidence supporting the Commission's findings is substantial. Illinois Central Railroad Co. v. Norfolk and Western Railway Co., 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Consolo v. Federal Maritime Comm's, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The Supreme Court of the United States has consistently defined the term "substantial evidence" as:

. . . enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.

*Illinois Central Railroad Co., supra,* 385 U.S. at p. 66, 87 S.Ct. at p. 260; National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660 (1939). The duty of the Commission is to draw such reasonable conclusions from its findings as in its discretion are appropriate. The possibility that two inconsistent conclusions can be drawn from the evidence does not mean that a finding by the Commission is not supported by substantial evidence. It is not the duty of the Court to strike down conclusions that are reasonably drawn from the evidence and findings of the case. It is the exclusive province of the Commission to make findings of fact, to draw legitimate inferences therefrom and to evaluate and determine the weight to be given conflicting evidence. United States v. Pan American Petroleum Corp., 304 U.S. 156, 158, 58 S.Ct. 771, 82 L.Ed. 1262 (1938); United States v. Chicago Heights Trucking Co., 310 U.S. 344, 352–353, 60 S.Ct. 931, 84 L.Ed. 1243 (1940). However, it is the duty of the Court to determine whether the course followed by the Commission is consistent with its mandate from Congress, and the Commission must set forth clearly the grounds on which it acted and justify and explain any departure from prior norms. Atchison, Topeka and Santa Fe Ry. Co. v. Wichita Board of Trade, 412 U.S. 800, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973).

## A FINDING OF UNJUST DISCRIMINATION OR UNDUE PREJUDICE IS NOT A PREREQUISITE FOR A FINDING OF AN UNREASONABLE PRACTICE

█ The *first* contention of Scott and International is that the finding of unjust discrimination or undue prejudice is not a prerequisite for a finding of an unreasonable practice in violation of Section 1(6) of the Act in connection with unabsorbed switching charges. The Hearing Examiner, in his report, said:

It is within the power of the Commission, in an appropriate case, to de-clare under Section 1(6) a refusal to absorb interline switching charges an unreasonable practice (*Public Belt* case *supra,* page 169). *However, the principle is well established that in the absence of unjust discrimination or undue prejudice the Commission cannot require a line-haul carrier to absorb a connecting line's switching charges.* Although the complainants have expressly renounced any claim that the practices complained of involve violation of Sections 2 and 3 of the Act relating to preferences, prejudice and discrimination, nevertheless in order to prove the unreasonableness under the provisions of Section 1 of the absorption provisions complained of, there must still be found to exist unjust discrimination against complainants or undue preference in favor of others. See Switching Charges and Absorption, 339 I.C.C. 65, 80; *Public Belt* case, *supra,* at page 171; Switching Charges on Crushed Stone, 186 I.C.C. 322, 327; and Celotex Co. v. Atlantic Coast Line R. Co., 159 I.C.C. 727, 731. (Emphasis added.)

The above language was amended by the Commission as follows:

It is within the power of the Commission, in an appropriate case, to declare under Section 1(6) a refusal to absorb interline switching charges an unreasonable practice (*Public Belt* case, *supra,* p. 169. *However, the principle is well established that in the absence of unjust discrimination or undue prejudice the Commission cannot require a line-haul carrier to absorb a connecting line's switching charges.* Although the complainants have expressly renounced any claim that the practices complained of involve violation of Section 2 and 3 of the Act relating to preferences, prejudice and discrimination, nevertheless such matters are in issue under Section 1(6) of the Act in situations where a refusal to absorb switching charges, in whole or in part, is alleged to be an unreasonable practice. Compare the *Public Belt*

case, *supra,* at page 171. (Emphasis added).

Neither unjust discrimination nor undue prejudice is a prerequisite for a finding of an "unreasonable practice" under Section 1(6) of the Act. Although the Commission appears to have made some attempt to remove this error from the report of the Hearing Examiner in this case, the error nevertheless persists throughout the report as finally adopted by the Commission. The United States of America and the Commission in their joint brief appear to acknowledge that it was error for the Commission to have placed any reliance upon the so-called "well established" principle of law. We deem it necessary to point out that, at least since Northern Pacific Ry. v. United States, 41 F.Supp. 439, 446 (D.Minn. 1941), it is "well established error" to hold that there must be a finding of unjust discrimination or undue prejudice in order to prove unreasonableness under Section 1(6) of the Act. In *Northern Pacific* the Court said, at p. 446:

> The petitioners contend that in many cases the Commission has held that, in absence of a finding of discrimination under Sections 2 and 3 of the Act, a practice will not be held unjust or unreasonable. [citations omitted]. It is not necessary to discuss the departure, if any, between the present order and the prior views of the Commission. Suffice it to say that the decisions are not stare decisis. An administrative agency may change its position. Virginian Ry. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463. From a reading of the Act, it would appear that whether a practice is unreasonable does not necessarily depend on whether it is also discriminatory. Section 15(1) uses the disjunctive in reciting the conditions under which a practice may be changed by the Commission. In other words, if a practice is unreasonable, or if it is discrimina-

tory, or if it is preferential, the Commission is empowered to act.

The appellants in *Northern Pacific* contended in their appeal to the United States Supreme Court that the Commission's action in requiring the absorption of switching charges in the absence of unjust discrimination or undue prejudice was error. However, the judgment of the three-judge court was affirmed in a *per curiam* opinion. Northern Pacific Ry. Co. v. United States, 316 U.S. 346, 62 S.Ct. 1166, 86 L.Ed. 1521 (1942).[9]

■ In Section 1(6) Congress has condemned "every" unjust and unreasonable practice. While evidence of unjust discrimination or prejudice may be relevant in determining whether a practice is unreasonable or unjust,[10] such a finding is not a prerequisite to a Section 1(6) violation. The requirements and prohibitions of Section 1(6) of the Act are independent of, and not dependent on, violations of other sections of the Act.

Scott and International contend that this error of law dominates and pervades the entire Hearing Examiner's report which was adopted by the Commission and this error requires this Court to annul and set aside the order of the Commission and remand the case to the Commission. And in support of their position they place reliance on Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L. Ed. 626 (1943). The United States and the Interstate Commerce Commission contend that the decision can be sustained on the grounds of reasonableness alone. Justice Frankfurter, speaking for the majority of the United States Supreme Court, in *Chenery*, stated, at p. 87–88, 63 S.Ct. at p. 459:

> The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.

9. The United States Supreme Court did not even discuss this alleged error in its opinion.

10. Public Belt R. Commission v. Aberdeen & R.R. Co., 335 ICC 162 (1969).

In confining our review to a judgment upon the validity of grounds upon which the Commission itself based its action, we do not disturb the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.' Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224. The reason for this rule is obvious. It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate. But it is also familiar appellate procedure that where the correctness of the lower court's decision depends upon a determination of fact which only a jury could make but which has not been made, the appellate court cannot take the place of the jury. Like considerations govern review of administrative orders. If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency.

See also Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947).

 We agree that in this case we must be guided by *Chenery*. If the Commission's order is valid only as a determination of policy or judgment which the Commission alone is authorized to make and which it has not made, a remand is required because a judicial judgment cannot be made to do service for an administrative judgment. The appellate court cannot intrude upon the dominion entrusted exclusively to the administrative agency. However, where the record discloses that one of the grounds upon which the Commission acted was based upon a legal error, the Commission must nevertheless be affirmed if another independent and error free ground is stated by the Commission. The Commission in adopting the report of the Hearing Examiner also adopted the following finding:

Complainants rely primarily upon the general rule that the best test of reasonableness is a comparison of the assailed rates with other rates in effect on like traffic moving in the same general territory. However, the application of this principle must depend upon the facts surrounding a particular case. See Cancellation of Wharfage Absorption, 335 I.C.C. 477, 525. As stated heretofore, complainants have not offered sufficient evidence from which a probative comparison could be made as to whether their traffic in woods and chips moves at the assailed rates in 'like' manner with all other traffic moving in Southern Territory. They have failed to demonstrate that their situation falls within the scope of those cases wherein it has been held that unabsorbed switching charges are unreasonable. In fact, the existing state of this record makes it clear that there are other places in this territory subject to unabsorbed switching charges greater that [sic] the sum of $4.21 complained of. While it is true that at Tuscaloosa the amount of absorption in defendants' tariffs is greater than that being absorbed at [Terminal Railway], there is no showing that there is any traffic moving at Tuscaloosa where the published switching charge is absorbed. Finally, there is insufficient proof on the whole case from which a determination of preference and prejudice can be made resulting from the failure of the line-haul defendants to make full absorption at Mobile.

The last two sentences of the above-quoted finding might seem on their face to suggest that the Commission did not distinguish clearly between the questions of undue discrimination and unreasonableness. However, the merging of the two issues in this finding results from the fact that Scott and International in presenting their case of unreasonableness produced evidence of alleged discrimination. As is hereinafter discussed, the Commission's opinion, read as a whole, indicates that the failure of Scott and International to sustain their burden of proving unreasonableness was an independent ground for its order that is free of error and supported by the record.

## NO VIOLATION OF SECTION 1(6) WAS SHOWN

The *second* reason advanced by Scott and International for setting aside the Commission's order is their contention that a *prima facie* case was made out that the failure of the line-haul carriers to absorb the total switching charges was an unreasonable practice in violation of Section 1(6) of the Act when compared with other absorption practices throughout the South. More specifically, Scott and International contend that they established a *prima facie* case that the situation at Mobile where the switching charge was not totally absorbed was an unreasonable practice when compared with the practice of absorbing switching charges throughout the South.

 The law is clear that the burden of proof in a proceeding under Section 1(6) of the Act is on the complainant to establish a *prima facie* case that the assailed rates are unreasonable. State Corporation Commission of New Mexico v. Southwestern Motor Freight Bureau, Inc., 329 ICC 803, 804 (1967); Public Belt Railroad Commission v. Aberdeen & R.R. Co., 335 ICC 162, 167 (1969). If the complainant establishes that the assailed rate exceeds other rates in effect on like traffic in the same territory, he has established a *prima facie*

case and the burden of producing evidence to justify the higher rate shifts to the defendants. *State Corporation Commission, supra,* at 808.

 Scott and International argue that the Commission's ruling that they failed to make out a *prima facie* case is an unexplained and unjustified departure from the long-established Commission doctrine that the best test of reasonableness of a rate is a comparison of the assailed rate with other rates in effect on like traffic moving in the same general territory. There is no question that the Commission has long adhered to the principle that the best test of the reasonableness of a rate is a comparison of the assailed rate with other rates in effect on like traffic moving in the same territory. Trimount Bituminous Products Co. v. Bangor & A.R. Co., 304 ICC 513 (1958); Panhandle Lbr. Co. v. Fort Worth & D.C. Ry. Co., 210 ICC 353, 355 (1935); Chamber of Commerce of Milwaukee v. Chicago R.I. & R. Ry. Co., 15 ICC 460 (1909). There is also no question that the Commission has applied this doctrine in holding that the existence of a widespread practice of absorption of switching charges at important markets established and maintained by the voluntary act of the defendant railroads is strong evidence as to the reasonableness of the practice and of the unreasonableness of their non-absorption at the complaining market. Minneapolis Traffic Ass'n v. Chicago & N.W. Ry. Co., 245 ICC 11, 16 (1941), aff'd, Northern Pacific Ry. Co. v. United States, *supra.* Our examination of the Hearing Examiner's report, as adopted by the Commission, discloses that this doctrine was recognized and applied and there was therefore no unexplained or unjustified departure from an established Commission doctrine in this case. The Commission adopted the following language from the Hearing Examiner's report, at page 13:

Additional cases wherein absorption practices relating to switching charges have been held unreasonable include Minneapolis Traffic Ass'n v. Chicago

& N.W. Ry. Co., 245 ICC 11, in which absorption was made only with respect to competitive traffic at the complaining terminal, whereas it was made on both competitive and non-competitive traffic at all other terminals with which the former was in active competition for markets. In such a situation, the practice at the competitive markets in absorbing switching charges on all traffic was held to be a strong indication as to the unreasonableness of the partial non-absorption at the complaining terminal.

In applying this established doctrine, however, the Commission adopted the finding of the Hearing Examiner that Scott and International failed to produce sufficient evidence upon which to base a finding that the situation at Mobile where the switching charge was not totally absorbed was an unreasonable practice when compared with other switching charge practices at other markets throughout the South. The report of the Hearing Examiner as adopted by the Commission makes this finding, at page 14:

> Complainants rely primarily upon the general rule that the best test of reasonableness is a comparison of the assailed rates with other rates in effect on like traffic moving in the same general territory. However, the application of this principle must depend upon the facts surrounding a particular case. See Cancellation of Wharfage Absorption, 335 ICC 477, 525. As stated heretofore, complainants have not offered sufficient evidence from which a probative comparison could be made as to whether their traffic in wood and chips moves at the assailed rates in 'like' manner with all other traffic moving in southern territory. They have failed to demonstrate that their situation falls within the scope of those cases wherein it has been held that unabsorbed switching charges are unreasonable. In fact, the existing state of the record makes it clear that there are other places in this territory subject to unabsorbed switching charges greater that [sic] the sum of $4.21 complained of. While it is true that at Tuscaloosa the amount of absorption in defendant's tariffs is greater than that being absorbed at [Terminal Railway], there is no showing that there is any traffic moving at Tuscaloosa where the published switching charge is absorbed.

■ The record shows that Scott and International offered evidence that the physical switching operations provided on pulpwood and wood chips by Terminal Railway are similar to those provided by the four line-haul carriers to ten other paper mills in the South. It was acknowledged, however, that the circumstances at Terminal Railway were different from any other paper mill located in the South because all the other mills are served either directly or by a non-independent switching carrier (NT 87–88). At four of the ten locations there are no separate switching charges because these places are served directly by a line-haul carrier. The Hearing Examiner found that the published switching charges at the remaining six locations, ranging from $5.67 per car to $11.41 per car, appear to be fully absorbed by the line-haul carriers, but found that Scott and International failed to show whether any traffic at these six locations is actually switched between different lines, whether the charges involved reciprocal switching or whether the traffic is competitive or non-competitive. The record also shows that the number of pulpwood and wood chips cars handled at these six locations is substantially less than the 17,000 cars received annually by Scott and International at Mobile. The Hearing Examiner correctly noted that neither Scott and International nor the line-haul carriers had made any meaningful study of the large volume of traffic in pulpwood and wood chips in the South which might have served as a basis for a finding concerning the extent to which the published absorption provisions are applied to traffic in pulpwood and wood chips.

On review of this record fails to disclose substantial evidence which would warrant a finding of a widespread practice of total absorption of switching charges on like traffic in the South. We conclude, therefore, that based upon our review of this record the Commission, in adopting the Hearing Examiner's report, made an error free finding that this record does not contain sufficient evidence upon which a finding of unreasonableness could have been made by the Commission pursuant to Section 1(6) of the Act.

## NO VIOLATION OF SECTION 1(5) OF THE ACT WAS SHOWN

The *third* error claimed by Scott and International is that the Commission, by adopting the finding of the Hearing Examiner that the total amount of the charges was not unreasonable, made an unjustified and unexplained departure from its long-established doctrine that the best test of the reasonableness of a rate is a comparison of the assailed rate with other rates in effect on like traffic moving in the same general territory. We find that the Commission did not depart from the doctrine that the best test of the reasonableness of a rate is a comparison of the assailed rate with other rates in effect on like traffic moving in the same general territory. The report of the Hearing Examiner, as adopted by the Commission, made the following finding in connection with the alleged violation of Section 1(5) of the Act:

It is the basic contention of complainants that because of the unabsorbed switching charges at the Alabama State Docks, they are being required to pay a transportation cost higher than the *level* prevailing under the Modified Roanoke Rapids Scale applicable to the movement of pulpwood and wood chips in the South. According to the testimony of a witness for complainants this scale of rates was initially found by the Commission in Reduced Rates on Pulpwood in Southern Territory, Docket

No. 30958, to be below a minimum reasonable level (291 ICC 155 and 297 ICC 735), but that following further hearings and the making of a cost study by the respondent railroads therein, the Commission found in its order dated December 17, 1957 in said proceeding, that these rates having been substantially increased, were not 'below a reasonable minimum' and were permitted to go into effect. It is fair to conclude, therefore, that the 'Roanoke Rapids' rates are not at their maximum level of reasonableness and it cannot be found that the addition of the small amount of $4.21 per car of unabsorbed switching charges would result in rates which exceed the maximum of reasonable charges. Hence, a violation of Section 1(5) does not exist. See Public Belt R. Comm., *supra,* at page 167; and Pressed Steel Car Company v. Director General, *supra.*

The Hearing Examiner correctly ruled that Scott and International had not placed in issue the reasonableness of the Modified Roanoke Rapids Scale of Rates which generally applied in the South. He also correctly ruled that Scott and International did not challenge the reasonableness of the switching charge in the proceeding before the Commission. They merely alleged that the total charge, line-haul plus switching, was unreasonable in that it exceeded the Modified Roanoke Rapids Scale of Rates, the rate prevailing throughout the South (NT 10).

Scott and International contend that they established a *prima facie* case of an unreasonable charge under Section 1(5) of the Act since they established that the total charges exceeded by $4.21 the level under the Modified Roanoke Rapids Scale. We agree with the Commission's conclusion that this record does not contain sufficient evidence from which a probative comparison could be made as to whether Scott's and International's traffic in pulpwood and wood chips moved at a higher rate than like traffic moving in the South.

There is no single "reasonable" rate for a commodity. Rather, there is a "zone of reasonableness" within which carriers are free to adjust their rates at will. United States v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 506, 55 S. Ct. 462, 79 L.Ed. 1023 (1935). The Commission, based upon the Hearing Examiner's findings, concluded that the Modified Roanoke Rapids Scale of Rates was not at its maximum level of reasonableness, and there was no evidence upon which it could find that the addition of the small amount of $4.21 per car of unabsorbed switching charges resulted in rates which exceeded the maximum of reasonable charges. The Commission's determination in this case is not unlike their disposition of a similar issue in *Public Belt, supra,* at page 167.

Section 1(5) of the act requires that all charges made for any service rendered in the transportation of property, or in connection therewith, shall be just and reasonable. It is contended that the through charges made by the defendants, including the $4.95 added for switching to or from points on the Belt Railroad, are unreasonable, in violation of section 1(5). The examiner found that, although a violation of this section was alleged, there was no allegation that the level of any rate or charge was or is unreasonable in and of itself. On exceptions the complainant, while conceding some inadequacy in its pleading, contends that the complaint and evidence in its entirety must be read together to resolve this issue. To do so, however, would be of no aid to the complainant. There is no probative evidence that the existing rates to New Orleans are at a maximum reasonable level, and it cannot be found that the addition of the small amount per hundred-weight, due to addition of the $4.95 charge per car, would result in rates which exceed the maximum of reasonableness. See New Orleans Public Belt R. Switching and Absorptions, *supra,* 644; Pressed Steel Car Co. v. Director General, 157 I.C.C. 623, 626; and High Point Chamber of Commerce v. Southern Ry. Co., 314 I.C.C. 683, 688. The circumstances are not such as to warrant conclusions under the principles mentioned in Port of New York Authority v. Aberdeen & R. R. Co., 321 I.C.C. 738, 746.

We, therefore, conclude that based upon our review of this record the Commission, in adopting the report of the Hearing Examiner, made an error free finding that there was not sufficient evidence upon which to find a violation of Section 1(5) of the Act.

## REBUTTAL EVIDENCE OF PROFITABILITY OF THE MODIFIED ROANOKE RAPIDS SCALE OF RATES INADMISSIBLE

The *fourth* and final contention of Scott and International is that it was error for the Hearing Examiner to deny their offer of rebuttal evidence, through an expert witness, to show that the Modified Roanoke Rapids Scale of Rates was highly profitable to the line-haul carriers. Such evidence would have been improper rebuttal. The line-haul carriers did not place in issue the reasonableness of the Modified Roanoke Rapids Scale of Rates. While such evidence might have been admissible in Scott's and International's case in chief to show that the Modified Roanoke Rapids Scale of Rates was at its maximum level of reasonableness, it was improper rebuttal and the Hearing Examiner correctly ruled it inadmissible.

Accordingly, the following Order is entered:

### ORDER

And now, this 8th day of March 1974, it is ordered that the Complaint of Plaintiffs, Scott Paper Company and International Paper Company, and the Complaint of Intervenor Plaintiff, Terminal Railway Alabama State Docks, are dismissed.