**COMMONWEALTH of Kentucky, REVENUE CABINET, Appellant,**

v.

**LIBERTY NATIONAL BANK OF LEXINGTON, Appellee.**

No. 92–CA–0509–MR.

Court of Appeals of Kentucky.

March 19, 1993.

Discretionary Review Denied by Supreme Court Aug. 25, 1993.

Chris Gorman, Atty. Gen., Arnold C. Jones, Frankfort, for appellant.

David A. Franklin, Jeffrey D. Damron, Lexington, for appellee.

Before HOWERTON, JOHNSON and MILLER, JJ.

JOHNSON, Judge.

The appellant, Revenue Cabinet for the Commonwealth of Kentucky (hereinafter "Cabinet"), has appealed a summary judgment of the Fayette Circuit Court which held that a judgment lien of appellee, Liberty National Bank of Lexington (hereinafter "Liberty"), is prior and superior to the tax lien of the Cabinet. The issue in this case is whether a tax lien resulting from a jeopardy assessment pursuant to KRS 131.-150 and filed by the Cabinet pursuant to KRS 134.420 may be defeated by a later filed lien. KRS 134.420 provides that tax liens of the kind at issue in this case, if notice is filed with the appropriate county clerk, shall have priority over any later filed liens. There is no dispute that the Cabinet filed its tax lien before Liberty filed its judgment lien. Nevertheless, for the reasons set out below, we affirm the summary judgment granted by the trial court against the Cabinet.

The facts are as follows: The First Federal Savings and Loan Association of Lexington, Kentucky foreclosed upon a mortgage against one Howard L. Davis. The parties to this appeal were joined as defendant lien holders. The Cabinet had filed its lien on January 20, 1989, and Liberty had filed its lien on June 14, 1990. In due course, the subject property was sold and First Federal was paid in full; approximately $13,000 was left for Liberty and the Cabinet. Liberty sent interrogatories to the Cabinet inquiring into the basis of the Cabinet's lien; the Cabinet declined to answer, citing KRS 131.190, the confidentiality statute. Liberty then procured an order compelling discovery which the Cabinet answered in relevant part as follows:

"*INTERROGATORY NO. 3:* Explain in detail how the amount of the jeopardy assessment claimed by the Revenue Cabinet was derived, including all numbers, the sources of those numbers, and all calculations.

*ANSWER: The assessment was an arbitrary assessment which was not calculated from any source.*" (Emphasis original.)

Liberty then moved for and received a summary judgment to the effect that its lien should be given priority over the Cabinet's lien notwithstanding the priority rule enacted at KRS 134.420. The trial court held that a tax lien based on a jeopardy assessment is not enforceable against third parties. We believe this to be erroneous; nevertheless, as discussed below, we believe the Cabinet's lien could not take priority over any other liens.

■■■ To rule for the Cabinet in this case would require us to accept several propositions of law, each of which we believe to be fundamentally unsound. First, we would have to accept the proposition that once a tax assessment made by the Cabinet becomes final, the assessment can no longer be questioned on any grounds. This would directly conflict with Kentucky Constitution Section 2 which prohibits arbitrary action by the State. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission*, Ky., 379 S.W.2d 450 (1964), provides for a three part test for arbitrariness in this Commonwealth with respect to administrative actions: (1) was the agency's action within the scope of its granted powers; (2) did the agency provide procedural due process; and (3) was the agency's decision supported by substantial evidence. If the administrative action fails to meet any of these standards, the action taken or the decision made must be considered to be arbitrary. In the present case, *the Cabinet has admitted that its assessment lacked any evidentiary support.* Thus, notwithstanding the holding of *Commonwealth v. Kettenacker*, Ky., 335 S.W.2d 339 (1960) (taxpayer who neglects to protest a jeopardy assessment in a timely manner will be bound by that assessment), we question the validity of the assessment which is at the heart of this case.

■■■ Second, to rule in favor of the Cabinet, we would have to accept the Cabinet's argument that a third party such as Liberty lacks standing to collaterally attack a jeopardy assessment. We believe this argument misses the point. The Cabinet was seeking to recover money from assets on which another party had a lien, and like any other lien holder the Cabinet can be

put to its proof. "The plaintiff [lien holder] must establish the right to the creation of a lien, the intention to do so, the existence of a debt or obligation ... and the amount to which the plaintiff is entitled as a lien." 51 Am.Jur.2d *Liens* Section 73 (1970). Where a lien holder is brought in by another, as in the present case, "[s]uch defendant[ ] shall not [ ] be allowed to withdraw or receive any of the proceeds of [the] sale, until they have shown their right thereto by answer and cross claim, which shall be asserted as provided in the Rules of Civil Procedure." KRS 426.006. The Cabinet is, in essence, asserting that it is exempt from the requirements of KRS 426.006. We disagree.

■■■ Finally, we do not accept the Cabinet's argument that it is prohibited by statute from presenting the evidence which could support its claims against subsequent lien holders. The Cabinet contends that KRS 131.190 prevents it from disclosing any of the information on which a jeopardy assessment is based. That statute provides in pertinent part:

> No present or former secretary or employee of the revenue cabinet ... shall divulge any information acquired by him of the affairs of any person, or information regarding the tax schedules, returns or reports required to be filed with the cabinet or other proper officer, or any information produced by a hearing or investigation, insofar as the information may have to do with the affairs of the person's business. *This prohibition does not extend* to information required in prosecutions ... nor does it extend *to any matter properly entered upon any assessment record,* or in any way made a matter of public record.... Further, this prohibition does not preclude the secretary or any employee of the revenue cabinet from testifying in any court, or from introducing as evidence returns or reports filed with the cabinet, in an action for violation of state or federal tax laws. [Emphasis added.]

It seems reasonable to believe that "any matter properly entered upon any assessment record" includes whatever evidence would ordinarily be used to make a jeopardy assessment under KRS 131.150. If it is true that the Cabinet asserts assessments

and liens against taxpayers without having any basis whatsoever for the amount, as their answer to the interrogatory quoted above implies, then there can be no injustice in refusing to give these liens priority over other valid liens. It is inconceivable that the Legislature intended the Cabinet to have the power to create a lien upon a person's property and, so long as that person did not care to contest it, be immune from having to provide any evidence whatsoever, as against other lienholders, that the lien had some valid basis. We believe that KRS 131.190 allows the Cabinet to produce the required evidence, and the Cabinet's refusal to present any evidence warrants the imposition of summary judgment against it.

The Cabinet's arguments regarding the chaos that will ensue if lien holders are allowed to question the validity of the judgments and administrative decisions which underlie other parties' liens need not be addressed in this case. The law of evidence and the doctrine of collateral estoppel should not present insuperable difficulties to the courts and the practicing bar.

The judgment of the circuit court is affirmed.

HOWERTON, J., concurs.

MILLER, J., concurs in result only.