SOUTHERN BLUEGRASS RACING, LLC, Appellant,

v.

KENTUCKY HORSE RACING AUTHORITY, Successor to the Kentucky Racing Commission, Appellee.

No. 2003–CA–001322–MR.

Court of Appeals of Kentucky.

May 14, 2004.

**50**

David A. Lambertus, Louisville, for appellant.

J. Bruce Miller, Louisville, for appellee.

Before: EMBERTON, Chief Judge; BUCKINGHAM and VANMETER, Judges.

BUCKINGHAM, Judge.

Southern Bluegrass Racing, LLC, appeals from an order of the Franklin Circuit Court affirming a decision by the Kentucky Racing Commission[1] denying Southern Bluegrass's application for a racing license. We affirm.

John Tim McCall and David Holloway created Southern Bluegrass Racing, LLC, for the purpose of developing a racetrack in Williamsburg, Kentucky, primarily for quarter horse racing. At the time they began their project, none of the tracks in Kentucky held quarter horse races. In addition to developing plans for the $20 million project, Southern Bluegrass entered into a lease with option to buy on the necessary acreage. The facility, which

---

1. The Kentucky Horse Racing Authority is the successor to the Kentucky Racing Commission. All further references in this opinion to the Kentucky Racing Commission will be made to its successor, the Kentucky Horse Racing Authority (KHRA).

was to be constructed on 45 acres, was intended initially to provide a venue both for quarter horse races as well as for other equine-related events.

Further, Southern Bluegrass developed the support of both local leaders and the business community in Williamsburg. It also developed a relationship with, and gained the support of, various quarter horse organizations both in and out of Kentucky. Having completed the initial steps for the project, Southern Bluegrass approached the KHRA with their request for both a license and approved race dates for 2003.

Southern Bluegrass's license application was brought before the KHRA at meetings on January 14, 2002, June 25, 2002, August 25, 2002, and October 28, 2002. Presentations were made at the meetings on behalf of Southern Bluegrass which gave an overview of the project and the steps that had been taken for its development. In addition, representatives of the American Quarter Horse Association were on hand to show their support for the project. Also, the chairman of the KHRA assigned three KHRA commissioners to serve as an ad hoc committee assigned to work with Southern Bluegrass throughout the application process.

However, various persons were present at one or more of the meetings to raise concerns in connection with the project. Alex Waldrop, a representative of Churchill Downs, stated that a track at Williamsburg could have a detrimental impact on several Kentucky Off–Track Betting System sites along the Interstate 75 corridor. Waldrop noted that one of the main purposes of the off-track betting system was to provide funding to support the purse structure at Kentucky's thoroughbred tracks. He stated his opinion that placing a track in Williamsburg would "cut the heart out of the Kentucky Off–Track Bet-

ting System." While Waldrop acknowledged the value the track could be to the Williamsburg community, he cautioned that small communities currently hosting off-track betting locations in that part of the state also relied on the jobs they provided. Laura Prewitt, general manager of the Kentucky Off–Track Betting System, agreed with Waldrop's comments. She stated that placing a track in Williamsburg "would be very detrimental to our company."

Bob Elliston, president of Turfway Park, also raised concerns with the Southern Bluegrass project. He stressed that he had the same concerns that Waldrop did concerning the impact a track in Williamsburg could have. Further, Elliston noted that his organization had entered into discussions with the American Quarter Horse Association concerning the possibility of adding quarter horse racing at Turfway. In addition, Nick Nicholson, president of Keeneland, urged that the KHRA not rush into a decision approving the license.

Local leaders and representatives of the Williamsburg business community attended a KHRA meeting and voiced their support for the Southern Bluegrass project and stated the positive impact it would have on the Williamsburg area. However, questions were raised concerning how Southern Bluegrass could expect to meet its projected average attendance of 4,000 a day during a three-day meet, when Churchill Downs in Louisville, running week long meets, was hard pressed to average 5,000 a day in attendance. Furthermore, the KHRA received a report from the ad hoc committee which included a short history of racetracks that had struggled since 1986. The ad hoc committee noted that four tracks had failed, one was in financial trouble, and one project had been approved but was never completed. The committee noted that these

unfavorable results had occurred during a period of economic growth, and it raised concerns over whether it was prudent to authorize new projects when those currently existing were struggling.

Ultimately, the KHRA entered a final order on November 4, 2002, denying Southern Bluegrass's application for a license. Southern Bluegrass filed a petition for review in the Franklin Circuit Court, and the circuit court entered an order on June 3, 2003, affirming the KHRA's decision to deny the license. This appeal by Southern Bluegrass followed.

There are limitations on the judicial review of KHRA decisions. The applicable statute states in pertinent part that:

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:
>
> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) Without support of substantial evidence on the whole record;
>
> (d) Arbitrary, capricious, or characterized by abuse of discretion;
>
> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
>
> (f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or
>
> (g) Deficient as otherwise provided by law.

KRS[2] 13B.150(2). Also, this court in *Commonwealth, Revenue Cabinet v. Liberty Nat'l Bank of Lexington,* Ky.App., 858 S.W.2d 199 (1993), noted that the test for arbitrariness with respect to administrative actions is whether the agency acted within the scope of its granted powers, whether it provided procedural due process, and whether its decision was supported by substantial evidence. *Id.* at 201, *citing American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Comm'n,* Ky., 379 S.W.2d 450 (1964).

Within the framework of these standards of review, Southern Bluegrass has raised two arguments. First, it argues that the KHRA decision was not supported by substantial evidence. Second, it argues that the KHRA acted contrary to the statutory scheme by denying its application for a license. We conclude that neither argument has merit.

█ We first address the argument by Southern Bluegrass that the KHRA acted arbitrarily in that its decision was not supported by substantial evidence of record. While Southern Bluegrass acknowledges that statements were made by persons involved with horse racing in Kentucky in opposition to its application, it characterizes the statements as "pure speculation" which were "never substantiated by real evidence."

█ Substantial evidence has been defined as "evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Kentucky State Racing Comm'n v. Fuller,* Ky., 481 S.W.2d 298, 308 (1972), *quoting O'Nan v. Ecklar Moore Express, Inc.,* Ky., 339 S.W.2d 466 (1960). Further, the KHRA "is afforded great lati-

---

**2.** Kentucky Revised Statutes.

tude in its evaluation of the evidence heard and the credibility of witnesses appearing before the Commission." *Id.* Also, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* at 307, *quoting Chesapeake and Ohio Railway Co. v. United States,* 298 F.Supp. 734 (W.D.Ky.1969).

We disagree with Southern Bluegrass's argument that the KHRA decision was not supported by substantial evidence. We agree with the Franklin Circuit Court that the statements made at the KHRA meetings by Alex Waldrop of Churchill Downs and Bob Elliston of Turfway Park, together with the findings and conclusions of the ad hoc committee, constituted substantial evidence to support the decision to deny the license. While it is true that Southern Bluegrass presented corporate disclosure forms that included supporting data and expert analysis concerning the costs and feasibility of the project, that fact does not mandate that those who spoke in opposition to the application were required to submit like evidence.

In effect, Southern Bluegrass challenges the credibility and weight of the evidence before the KHRA. However, neither the Franklin Circuit Court nor this court may substitute its judgment for that of the agency as to the weight to be given to the evidence and as to the credibility of the witnesses. *See* KRS 13B.150(2) and *Fuller,* 481 S.W.2d at 308. In short, the circuit court did not err in its conclusion that the KHRA decision was supported by substantial evidence.

■ Southern Bluegrass's second argument is that the circuit court erred in not finding that the KHRA acted contrary to statute. Southern Bluegrass bases its argument on various provisions within KRS Chapter 230. First, it notes that one of the purposes and policies of the Commonwealth in regulating horse racing is "to foster and to encourage the business of legitimate horse racing with pari-mutuel wagering thereon in the Commonwealth on the highest possible plane." KRS 230.215(1). Next, it notes KRS 230.300(6) which states:

The commission may issue a license to conduct a horse race meeting to any association making the aforesaid application if the applicant meets the requirements established in KRS 138.530 and other applicable provisions of this chapter, and if the commission finds that the proposed conduct of racing by the association would be in the best interest of the public health, safety, and welfare of the immediate community as well as to the Commonwealth.

Finally, Southern Bluegrass relies on KRS 230.280(2) which states that the KHRA may issue a license unless it determines that any one of several factors exists. Southern Bluegrass asserts that none of the statutory disqualifying factors were present in its case, that the KHRA did not follow the statutory policy of supporting live horse racing in this Commonwealth, and that the KHRA erred in not granting it a license.

We note at the outset that Southern Bluegrass did not have a personal right to receive a license. KRS 230.215(1) states in part that "the participation in any way in horse racing . . . is a privilege and not a personal right; and that this privilege may be granted or denied by the [KHRA] or its duly approved representatives acting in its behalf." Furthermore, KRS 230.300(6), quoted above, states that the KHRA "*may* issue a license" provided various requirements are met, including that the proposed project would be in the best interest of the immediate community as well as the Commonwealth. Likewise, KRS 230.280(2)

states that the KHRA "*may* issue or renew a license." In short, the statutes do not require the KHRA to issue a license to an applicant even though it may have complied with all statutory requirements. Rather, the statutes merely authorize the KHRA to issue the license.

The real issue is whether or not the KHRA acted arbitrarily in its denial of Southern Bluegrass's license application. While the KHRA considered evidence favorable to the project and the positive impact it would have on the Williamsburg area, it was also faced with evidence that a track at Williamsburg would adversely impact the Kentucky Off–Track Betting System and thus the purse structure for the thoroughbred racing industry. Further, the KHRA heard testimony concerning the negative impact the track would likely have on the small communities in that part of the state that already offer off-track betting facilities. Finally, the KHRA properly considered the current state of the racing industry as well as the impact that failed tracks have had on the industry in the past. In light of these considerations, we conclude that the KHRA did not act arbitrary or otherwise contrary to the governing statutory provisions.

The order of the Franklin Circuit Court affirming the KHRA's decision to deny Southern Bluegrass a racing license is affirmed.

ALL CONCUR.